**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TRUDY BLOUGH,<br><br>   Plaintiff,<br><br> v.<br><br>BCD TRAVEL USA LLC.<br><br>   Defendant. | Civil Action No. 2:23-cv-01979-MPK<br><br>Hon. Maureen P. Kelly<br><br><br>*Electronically Filed* |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**</u>

Defendant BCD Travel USA LLC ("BCD"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, files this Memorandum of Law in Support of its Motion for Summary Judgment. For the reasons set forth herein, the Court should grant BCD's Motion and dismiss the Complaint of Plaintiff Trudy Blough in its entirety with prejudice.

## I. INTRODUCTION

Plaintiff Blough asserts claims of (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) hostile work environment in violation of Title VII; (3) breach of contract; and (4) violations of the Equal Pay Act ("EPA"). Despite over a year and a half of discovery and BCD's production of over 12,400 documents (totaling more than 52,500 pages), Ms. Blough can point to no evidence to support her claims of bias or discriminatory animus based on her sex and instead relies on her bald assertions that she was treated unfairly as a result of her sex or due to nepotism. (*See* ECF 55). Even then, most of her claims about what she believes was unfair treatment relate to events that occurred well outside the statute of limitations for her Title VII claim of discrimination. She cannot demonstrate that she was subjected to any adverse action—she resigned her employment voluntarily and cannot establish that she was constructively

discharged. Similarly, her Equal Pay Act claims fail because she cannot establish that she was paid less than males at the same establishment or that the way in which accounts were assigned constitutes a violation of the EPA. Finally, she cannot establish that BCD breached its contract with her because it paid her the commissions she earned under her Sales Incentive Plans. As a result, her claims should be dismissed with prejudice.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The moving party need not provide evidence "negating the opponent's claim" but rather need only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The burden then shifts to the non-moving party to point to specific evidence — as opposed to mere allegations, general denials or vague statements — establishing a genuine issue for trial. *Id.* at 324; *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1302 (3d Cir. 1993). If she fails to make such a showing, summary judgment must be entered against her. *Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 249-50.

## III.    ARGUMENT

### A.    <u>**Ms. Blough Was Not Subjected to Discrimination Based on Her Gender.**</u>

Ms. Blough cannot demonstrate that BCD discriminated against her based on her gender. To prevail on a claim for gender discrimination under Title VII, Ms. Blough must satisfy the familiar burden-shifting inquiry established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425-426 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir.

2006)). Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Burton*, 707 F.3d at 426. If a *prima facie* case is established, the burden of production shifts to BCD to present a legitimate, non-discriminatory reason for its actions. *Id*. If such a reason is proffered, the burden shifts back to Ms. Blough to prove by a preponderance of the evidence that BCD's proffered reason is a pretext for discrimination. *Id*. At all times, the ultimate burden of proving intentional discrimination remains with Ms. Blough. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

        **1.     Ms. Blough Cannot Establish a *Prima Facie* Case of Gender Discrimination.**

In order to establish a *prima facie* case of gender discrimination, Ms. Blough must show that she: (1) is a member of a protected class; (2) was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse action give rise to an inference of discrimination. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999). "[T]he central focus of the *prima facie* case of gender discrimination is always whether the employer is treating some people less favorably than others because of their sex." *Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010) (internal quotations and citations omitted). Ms. Blough cannot satisfy the third or fourth elements of this test as she cannot show that she was subjected to any adverse employment action, nor can she establish that there were any circumstances that give rise to any inference of discrimination.

        **a.     *Ms. Blough Was Not Subjected to Any Adverse Employment Action.***

Ms. Blough alleges that she suffered adverse employment actions when she was denied the opportunity to work on "lucrative sales accounts" that male employees were permitted to work on

and denied leadership roles and decision-making authority granted to male employees.[1] (ECF 15, ¶ 40). These claims are baseless.

As an initial matter, Ms. Blough filed her charge of discrimination against BCD with the Equal Employment Opportunity Commission ("EEOC") on June 13, 2022. (Defendant's Statement of Material Facts ("DSOF") ¶ 112; Joint Statement of Undisputed Facts, ECF 69, ¶ 49). Ms. Blough cannot rely on any allegedly discriminatory account assignment decisions or discrete acts that took place prior to August 17, 2021, as such acts are time-barred. Before filing suit under Title VII, a plaintiff must exhaust administrative remedies by filing a timely charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e). Failure to file a timely charge bars a Title VII civil action. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (holding that a party must file an EEOC charge within 180 or 300 days of a discrete act of discrimination or retaliation "or lose the ability to recover for it."). In deferral states such as Pennsylvania, the charge must be filed within 300 days of the allegedly illegal act. 42 U.S.C. § 2000e-5(e)(1); *Seredinski v. Clifton Precision Prods., Co.*, 776 F.2d 56, 61 (3d Cir. 1985). The initial period for filing the charge is treated as a statute of limitations. *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). The purpose of this limitations period is both to protect those who promptly assert their rights as well as to protect employers from the burden of defending stale claims. *Delaware State College v. Ricks*, 449 U.S. 250, 256-57 (1980).

---

[1] As pled, Ms. Blough purports to allege constructive discharge as a means of meeting the "adverse employment action" prong of the *McDonnell Douglas* test for discrimination and retaliation. (ECF 15, ¶¶ 37-44). However, *McDonnell Douglas* does not apply to constructive discharge cases. *Belles v. Wilkes-Barre Area Sch. Dist.*, 2020 WL 1028338, at *6 (M.D. Pa. Mar. 3, 2020); *Montgomery v. City of Pittsburgh*, 2017 WL 7940776, at *11 (W.D. Pa. Oct. 3, 2017), *report and recommendation adopted by* 2018 WL 1141733 (W.D. Pa. Mar. 2, 2018). Accordingly, the constructive discharge claim is analyzed alongside Ms. Blough's hostile work environment claim below.

In the Amended Complaint and in her deposition, Ms. Blough alleges that BCD violated Title VII by discriminating against her based on her sex by taking the following actions:

- Jorge Cruz allegedly did not assign her a sufficient number of quality accounts and prospects when Jorge Cruz hired as a Vice President, Global Sales in 2018, and he did not respond to her requests for better accounts and prospects when two of her new colleagues gave her ten of their prospects that fall. (ECF 69, ¶ 13; DSOF ¶ 22).

- BCD did not reassign Debra Cruz's accounts to Ms. Blough when Ms. Cruz was transferred from the global sales team to the media and entertainment team in March 2021. (ECF 69, ¶ 34; DSOF ¶¶ 58-59).

- BCD did not assign her any the accounts of Mark O'Brien, a Vice President, Global Sales who worked in the United Kingdom, when he left BCD in May 2021. Following Mr. O'Brien's departure from BCD,[2] BCD instead assigned several of his substantial prospective accounts to Sachin Sekhri, Debra Cruz, Ton Maanicus, Nick Dewey, and Ralph Winkler, and not to Ms. Blough.[3] (Deposition of Trudy Blough ("Blough Dep.") (App. at ECF 70-2, p. 23), 79:9-16; ECF 15, ¶¶ 13, 15; DSOF ¶¶ 62-63, 65).

- BCD assigned Andy Menkes, a travel consultant hired as a short-term employee of BCD, to the sales teams for two of Ms. Blough's prospective client accounts – UPS and Becton Dickinson. (ECF 15, ¶ 19). Mr. Menkes's employment with BCD ended in 2020, and the UPS bid was closed as lost in August 2019, while the Becton Dickinson bid was closed as lost in May 2020. (DSOF ¶¶ 32, 35, 38; ECF 69, ¶¶ 16-21).

- BCD assigned Kessie Bratko, a female BCD employee who was not in sales, to the sales teams for two of Ms. Blough's prospective clients – Johnson & Johnson and Eli Lilly. (ECF 15, ¶¶ 27-28). Ms. Bratko was assigned to work on these sales teams in approximately November 2019. (DSOF ¶¶ 45-46; ECF 69, ¶¶ 26-31). The Eli Lilly bid was closed as lost in February 2020. (DSOF ¶ 47).

- Jorge Cruz, Ms. Blough's supervisor, asked her if she could "speak in front of a crowd," in front of other BCD colleagues at a meeting on December 3, 2019. (ECF 15, ¶ 29).

Accordingly, while Ms. Blough attempts to point to numerous instances of purported

---

[2] Ms. Blough stated in her deposition that Mr. O'Brien left BCD's employment in May 2021, but as set forth in Defendant's Statement of Facts, Mr. O'Brien separated from BCD in March 2021. This minor distinction is not material for purposes of summary judgment.

[3] Despite Ms. Blough's assertions in Paragraph 15 of her Amended Complaint about account reassignments that were made between May 2021 and October 2021, any account assignments related to Mr. O'Brien's departure took place prior to August 17, 2021 (DSOF ¶¶ 62-63, 65). Moreover, Ms. Blough failed to mention that she was assigned an account from Mr. O'Brien following his departure – Schlumberger, in May 2021. (DSOF ¶ 65).

discrimination, nearly all of the discrete acts she complains of took place prior to August 17, 2021, the relevant time frame in this litigation, and cannot be used to support her gender discrimination claim.

### b.    Ms. Blough Cannot Show that the Way BCD Assigned Accounts and Prospects Gives Rise to an Inference of Discrimination.

Ms. Blough's primary claim of discrimination is that BCD assigned accounts and to her male counterparts and to Debra Cruz, Mr. Cruz's spouse, instead of her because of her sex. (ECF 15, ¶¶ 13-15). She cannot, however, provide evidence from which a factfinder could infer that BCD's assignment of accounts was discriminatory. "A plaintiff can establish an inference of discrimination by showing that he or she was treated differently than similarly situated employees outside of the protected class." *Burton v. Pennsylvania State Police*, 990 F. Supp. 2d 478, 501 (M.D. Pa. 2014), *aff'd*, 612 Fed. App'x 124 (3d Cir. 2015) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000)). To be similarly situated, a comparator employee must be comparable "in all relevant respects." *Davis v. Pittsburgh Pub. Sch.,* 930 F. Supp. 2d 570, 600 (W.D. Pa. 2013); *Opsatnik v. Norfolk Southern Corp.*, 335 Fed. App'x 220, 222-23 (3d Cir. 2009) (to be used as evidence of pretext, purported comparators must be similarly situated to plaintiff "in all relevant respects," and "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them"). Where a plaintiff lacks evidence that the employer treated similarly situated individuals outside of the protected class more favorably, the plaintiff cannot support the fourth prong of her *prima facie* case and the employer is entitled to summary judgment. *James v. Allentown Bus. Sch.*, No. CIV.A. 01-857, 2003 WL 21652189, at *13 (E.D. Pa. June 2, 2003).

Ms. Blough claims that in the spring of 2021 client prospects were unfairly assigned to four male comparators – Sachin Sekhri, Ton Maanicus, Nick Dewey, and Ralph Winkler – and female

comparator Debra Cruz instead of her. (DSOF ¶ 63; ECF 15, ¶¶ 13-15). However, she points to nothing that was improper or that was contrary to BCD's policies in the way these accounts were assigned. Rather, she bases her claim on her beliefs about how account prospects should have been distributed among the vice presidents of global sales. (ECF 15, ¶ 16; DSOF ¶ 63). She admits she had no prior relationship with any of those accounts. (DSOF ¶ 64). Other than her personal belief, she points to nothing that could support an inference of sex discrimination. BCD's assignment of prospective accounts and activities is based on a myriad of factors, none of which is assignment based on sex. (ECF 69, ¶ 4; DSOF ¶¶ 8-10). Ms. Blough cannot identify any account that either was not assigned to Ms. Blough after consideration of relevant factors or was otherwise improperly or unlawfully assigned.

Moreover, the fact that she includes Ms. Cruz as a comparator directly undermines her claim of gender discrimination. Ms. Cruz, a female, is in the same protected class as Ms. Blough. Because another female Vice President, Global Sales was also assigned or retained many of the account prospects Ms. Blough alleges she should have received, she cannot show that similarly situated males were treated more favorably than females.

Ms. Cruz's status as the wife of Ms. Blough's direct supervisor cannot serve as the basis for a complaint of gender discrimination. *See Miller v. Aluminum Co. of Am.,* 679 F. Supp. 495, 501 (W.D. Pa. 1988) ("[P]referential treatment on the basis of a consensual romantic relationship between a supervisor and an employee is not gender-based discrimination ... Favoritism and unfair treatment, unless based on a prohibited classification, do not violate Title VII."); *Degidio v. Centro Props., LLC*, No. CIV.A. 11-1353, 2013 WL 440131, at *5 (E.D. Pa. Feb. 4, 2013) ("The law is clear that preferential treatment of a 'paramour' based on a consensual romantic relationship alone is not unlawful gender-based discrimination because such favoritism, while unfair, disadvantages

7

*both* sexes in favor of the 'paramour.'") (citations omitted); *Handley v. Phillips,* 715 F. Supp. 657, 675 (M.D. Pa.1989) ("[D]issimilar treatment resulting from Defendant['s] ... alleged desire to promote another female to whom he is romantically linked is not the basis for a Title VII claim.").

While the Third Circuit does not appear to have addressed whether claims of favoritism toward a paramour can give rise to a claim of sex discrimination under Title VII, every court of appeals that has addressed the issue has found that it cannot. *Maner v. Dignity Health*, 9 F.4th 1114, 1120-21 (9th Cir. 2021) (finding no cause of action and citing similar rulings by the Second, Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits). Accordingly, the allegations in the Amended Complaint regarding the purported issue of nepotism in the workplace provide no support for a claim of gender discrimination.

Because Ms. Blough cannot set forth a *prima facie* case of gender discrimination, her claim should be dismissed.

### 2. BCD Has Articulated a Legitimate, Non-Discriminatory Reason for the Way It Assigns Account Prospects.

Even if Ms. Blough were able to establish a *prima facie* case of gender discrimination, BCD has met its burden by articulating a legitimate basis for its decision to assign the contested prospective client accounts as it did. An employer's burden at the summary judgment stage is of production only, is "relatively light," and is satisfied if the employer articulates a legitimate reason for the challenged employment decision. *Fuentes*, 32 F.3d at 763; *Davis*, 930 F. Supp. 2d at 597.

BCD has more than satisfied this burden. As set forth above, account assignments are determined based on multiple considerations several different factors, including but not limited to: an employee/sales teams' geographic proximity to a client's principal location and the location of the decisionmaker; the timing of a request for proposal for the prospective client; the salesperson's experience with and knowledge of the client or prospect and its industry; previously established

client relationships; and the salesperson's overall sales seniority/experience, current workload/bid activity, and work history, with no single factor being dispositive, and not all prospective accounts are re-distributed following the departure of a Vice President, Global Sales from BCD. (DSOF ¶¶ 8-10). Accordingly, BCD has introduced sufficient undisputed evidence that, "if taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Creely v. Genesis Health Ventures, Inc.,* No. CIV.A. 04-CV-0679, 2005 WL 1271876, at *5 (E.D. Pa. May 26, 2005), *aff'd*, 184 Fed. App'x 197 (3d Cir. 2006).

### 3. Ms. Blough Cannot Show Pretext.

Ms. Blough has not, and cannot, adduce any evidence from which a reasonable juror could conclude that BCD's reasons for the assignment of prospective accounts were pretextual or otherwise indicative of a gender-based animus. To establish pretext, Ms. Blough must show direct or circumstantial evidence from which a factfinder could reasonably (1) disbelieve BCD's articulated reason, and (2) believe an invidious discriminatory reason was more likely than not the determinative cause of BCD's actions. *Fuentes*, 32 F.3d at 764; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993).

### a. Ms. Blough Can Offer No Evidence to Discredit BCD's Account Assignment Decisions.

Under the first prong of *Fuentes*, a plaintiff can show pretext only if she can "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d 765 (internal citations omitted); *Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 605 (W.D. Pa. 2014). Put another way, a plaintiff "must show, not merely that the employer's proffered reason was wrong, but that is was so plainly wrong that it cannot have been the employer's real reason." *Id.* at 1109.

Ms. Blough cannot demonstrate pretext simply by asserting that she should have been assigned the accounts at issue instead of male colleagues or Ms. Cruz. The question before a court at summary judgment is whether evidence exists that "discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d 765. It is well established that the Court may not second-guess an employer's business decisions, and an employer will not be liable for making a business judgment that affects the status of an employee even if the decision was a poor one. The Third Circuit has held:

> An employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason. We do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers…Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.

*Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (citing *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992)).

Ms. Blough "has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this doubt, [a] court will not intervene in an otherwise valid management decision. To require less would be to expose to litigation every management decision impacting on a protected party." *Billet v. CIGNA Corp.*, 940 F.2d 812, 828 (3d Cir. 1991), *overruled on other grounds*; *accord Davis*, 930 F. Supp. 2d at 601 ("The Court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination.").

Ms. Blough offers no evidence to show that BCD's decisions to assign any accounts to other sales employees were based on her gender. Indeed, Ms. Blough's claim is based in part on assignment of accounts to another female, Debra Cruz.  It is not the Court's or a jury's role to

second-guess whether BCD made the right decision. *See*, *e.g.*, *Billet*, 940 F.2d at 825 ("[W]hat matters is the perception of the decision maker. The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."); *Davis*, 930 F. Supp. 2d at 602 ("The inquiry must focus upon 'the perception of the decision makers.' The defendants only needed on honest belief" in the basis for their decision); *Kelly v. Drexel Univ.*, 907 F. Supp. 864, 876-77 (E.D. Pa. 1995), *aff'd*, 94 F.3d 102 (3d Cir. 1996) (holding that the employer was "free to choose any nondiscriminatory criteria" for its decision and that its decision regarding which employees could most efficiently "absorb the workload of the eliminated employee" was not subject to judicial review). As a result, Ms. Blough cannot satisfy the first prong of *Fuentes*.

### b. Ms. Blough Is Unable to Show BCD's Decisions Were Pretext for Discriminatory Animus.

Prong two of the *Fuentes* test permits a plaintiff to survive summary judgment if she can demonstrate through record evidence that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. Under this prong, the kinds of evidence relied upon by the courts in the Third Circuit are: (1) whether the employer previously discriminated against the plaintiff; (2) whether the employer has discriminated against other persons within the plaintiff's protected class or within another protected class; and (3) whether the employer previously treated more favorably similarly situated persons not within the protected class. *Bielich*, 6 F. Supp. 3d at 605 (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 644-45 (3d Cir. 1998) (affirming district court's grant of summary judgment to defendant where plaintiff failed to produce evidence sufficient to demonstrate that defendant's proffered legitimate reason for demoting plaintiff was pretextual or otherwise show inference of discrimination). Here, there are no facts that might suggest pretext for gender discrimination.

11

Ms. Blough offers no evidence that BCD previously discriminated against her. Instead, the record evidence shows that Mr. Cruz valued Ms. Blough, selected her for promotion to the Vice President, Global Sales position and provided her with support personnel in order to assist with her bids to increase the chance that BCD would win the business on the accounts to which she was assigned. (DSOF ¶¶ 13-14, 19, 31, 38, 45-46, 48-49 ; ECF 69, ¶¶ 8-9, 16-17, 26-28).

Plaintiff also provides no evidence of BCD discriminating against other women or favoring similarly situated men. To the contrary, as noted above, she complains that another woman was treated more favorably than she was, undermining her claims of gender discrimination. While she points to three male comparators, the evidence shows the business justification for the assignment of the contested prospects to these individuals. (DSOF ¶¶ 62-63). Specifically, the only accounts that Ms. Blough contests as improperly assigned that actually were reassigned following Mr. O'Brien's separation were reassigned based on considerations of location of salesperson and decisionmakers, skillset, and experience. (DSOF ¶¶ 62-63).

As a result, Ms. Blough has failed to produce evidence beyond her personal belief from which an inference of sex-based animus can be inferred from BCD's assignment of prospects. Rather, as the record demonstrates, the decision to assign the prospective accounts was made because BCD determined that its best opportunity to win the business would come from the assignment of those accounts in that manner. (DSOF ¶ 63). She does not have any evidence that the factors BCD asserts that it considers are not the factors it used in assigning accounts or that the decisions were not based on its assessment of which salesperson would be in the best position to lead a team that would win the business for BCD. Accordingly, Ms. Blough cannot establish pretext and cannot rebut BCD's legitimate, non-discriminatory reasons for its distribution of prospective client accounts.

**B.**     **Ms. Blough Was Not Subjected to a Hostile Work Environment or Constructively Discharged.**

Ms. Blough alleges that she was subjected to a hostile work environment because BCD allegedly provided male salespeople and Ms. Cruz with "more lucrative business opportunities and decision-making authority," and by "permitting such conduct to continue after BCD Human Resources' involvement." (ECF 15, ¶ 46).[4] Her harassment claims fail because, even accepting her allegations about the purported treatment are true, the claimed harassment is not actionable. To establish a hostile work environment claim, a plaintiff must prove (1) that she suffered intentional harassment because of her sex; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected her; (4) the harassment would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability. *Woodard v. PHB Die Casting*, 255 Fed. App'x 608, 609 (3d Cir. 2007*); Tourtellotte v. Eli Lilly & Co.*, 636 Fed. App'x 831, 845-46 (3d Cir. 2016); *Donahue-Cavlovic v. Borough of Baldwin*, No. 2:15-CV-1649, 2017 WL 4862072, at *7 (W.D. Pa. Oct. 26, 2017)). Assuming for purposes of this Motion only that Ms. Blough can establish the third and fifth prongs of the test, her harassment claim fails because she cannot prove that she suffered intentional harassment because of her sex, that the

---

[4] To the extent that Ms. Blough purports to allege that any other discrete instances attributed to her hostile work environment claim, such as adding Andy Menkes and Kessie Bratko to the sales team for certain clients and the direction to work with Mr. Menkes and Ms. Bratko on the bids, Mr. Cruz's alleged failure to address issues with Mr. Menkes, or the allegation that Mr. Cruz asked her about her speaking ability in front of other BCD employees (*see* ECF, 15 ¶ ¶19-20, 28-29), such alleged incidents occurred outside of the statute of limitations. The continuing violation doctrine does not apply to these allegations, as none of those purported acts took place within the relevant time period between August 17, 2021 and Ms. Blough's resignation on October 14, 2021 and are not part of the same employment practice as the purported failure to assign certain accounts to Ms. Blough. *See Mandel v. M & Q Packaging Corp.*, No. 3:09-CV-0042, 2013 WL 1899809, at *6 (M.D. Pa. May 7, 2013) ("Under the continuing violation theory, a hostile work environment claim will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.") (citations and quotations omitted).

alleged harassment was severe or pervasive, or that the alleged harassment would detrimentally affect a reasonable person in similar circumstances.

### 1. Ms. Blough Was Not Subjected to Severe or Pervasive Conduct.

The law only prohibits sexual harassment that is intentional and "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Obergantschnig v. Saw Creek Ests. Cmty. Ass'n, Inc.*, No. 12-CV-5911, 2013 WL 5676328, at *4 (E.D. Pa. Oct. 18, 2013), *aff'd*, 573 Fed. App'x 213 (3d Cir. 2014) (citations omitted). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (holding that a plaintiff must show that her "workplace [was] permeated with discriminatory intimidation . . . that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment"). This is a high standard designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 778; *Donahue-Cavlovic,* 2017 WL 4862072 at *9 ("Courts have held plaintiffs to a high standard to satisfy the serious or pervasive requirement."). In determining whether an environment is hostile or abusive, courts look at numerous factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [and] whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

None of the conduct alleged by Ms. Blough constitutes severe sexual harassment. *See, e.g., E.E.O.C. v. Chubb & Son, No*. CIV.A.03-4771, 2005 WL 758245, at *8 (E.D. Pa. Apr. 1, 2005) (Court determined that a number of slights, including "denigrating her leadership ability to be a team member," not talking to the plaintiff, not letting the plaintiff develop language for a claim

form, and not assigning additional duties, were "a far cry from the level of abuse recognized by the Third Circuit as creating a hostile work environment."). The business decisions made with respect to account assignment do not rise to the level of extreme conduct required to state a claim for sexual harassment. There is no record evidence of humiliating or physically threatening conduct, a hallmark of actionable hostile work environments based on severe conduct. Rather, Ms. Blough's allegations relate to perceived slights in not receiving certain accounts and one comment at a work dinner in 2019 questioning her experience with public speaking, which Title VII does not protect and is outside the statute of limitations in any event. *See Selvato v. SEPTA*, 143 F. Supp. 3d 257, 266 (E.D. Pa. 2015) ("Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted."); *Baird v. Outlook Pointe,* No. 4:07-CV-1580, 2008 WL 4287382, at *16 (M.D. Pa. Sept. 17, 2008) (noting that although a plaintiff may be "frustrated with some of her supervisors and co-workers, and frequently voiced concerns about favoritism, nepotism, interpersonal conflicts, a perceived lack of respect, and others' lack of diligence ... Title VII ... 'does not set forth a general civility code for the American workplace,' and does not mandate a happy, pleasant, or stress-free work environment.") (citations omitted). Without evidence of physically humiliating or threatening conduct, Ms. Blough's claims do not meet the standard necessary to withstand summary judgment. *See Hoist v. N.J.*, No. 12-5370, 2015 WL 4773275, at *24 (D.N.J. Aug. 13, 2015), *aff'd*, 642 Fed. App'x 169 (3d Cir. 2016) ("while [plaintiff] may have been offended by the way . . . management treated her, the harassment she asserts was not particularly frequent, and certainly was not physically threatening or humiliating.").

Further, because the complained of conduct was sporadic, at best, given the few complaints and extended period of time between her 2019 complaints to HR about what she perceived to be

the inadequacy of her pipeline and Mr. Cruz's alleged failure to address her concerns about her pipeline and her resignation in October 2021, Ms. Blough cannot establish the pervasiveness standard for her hostile work environment claims. *Boyer v. Johnson Matthey*, Inc., No. 02-CV-8382, 2005 WL 35893, at *16 (E.D. Pa. Jan. 7, 2005) (hostile work environment claim may not "rely upon casual, isolated or sporadic incidents"). In the two complaints Ms. Blough made to BCD's Human Resources personnel in 2019, she made no assertion of harassment or disparate treatment as a result of her gender. (DSOF ¶¶ 80-93). Indeed, after her conversations with Yvette Bryant and Mr. Cruz in 2019, Ms. Blough stated that she had discussed her concerns with Mr. Cruz, they had a "good talk," and "things seem to be at a normal now with no further concerns or issues. We are all good. 😊 ." (DSOF ¶ 91). She made no further complaint regarding her work environment to BCD until her resignation, and even then, made no allegation that she was mistreated due to her gender. (DSOF ¶¶ 99-100, 105). Accordingly, because Ms. Blough cannot establish that she was subjected to severe or pervasive harassment, her hostile work environment claim must fail.

**2.    Ms. Blough Was Not Subjected to Intentional Harassment Because of Her Sex.**

Even assuming *arguendo* that Ms. Blough could establish that she was subjected to some form of harassment, which BCD denies, there is no evidence to indicate that any actions were taken because of her sex. Anti-discrimination statutes do "not prohibit all verbal or physical harassment in the workplace; [they are] directed only at 'discrimination . . . because of . . . [protected classes]." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (emphasis in original). A hostile work environment claim, therefore, "requires a showing of some causal connection between [a plaintiff's] membership in a protected class and [her] alleged mistreatment." *Nardella v. Philadelphia Gas Works*, 621 Fed. App'x 105, 107 (3d Cir. 2015)

16

(citations omitted). "If the workplace is unpleasant, or even revolting, for any reason other than hostility generated because on account of an employee's membership in a protected class under Title VII, then the hostile environment fails to implicate a federal [discrimination or harassment] claim." *Hoist v. N.J.*, No. 12-5370, 2015 WL 4773275, at *22 (D.N.J. Aug. 13, 2015), *aff'd*, 642 Fed. App'x 169 (3d Cir. 2016) (internal quotations omitted).

Ms. Blough can point to no evidence that any of the purported conduct is related to her sex; she instead relies on her own subjective beliefs and conjecture. This is insufficient as a matter of law to support her hostile work environment claims. *See Brooks v. CBS Radio, Inc.,* No. CIV.A. 07-0519, 2007 WL 4454312, at *13 (E.D. Pa. Dec. 17, 2007), *aff'd,* 342 Fed. App'x 771 (3d Cir. 2009) (when nothing in record – other than plaintiff's own assertions – indicates facially neutral actions were motivated by racial animus, plaintiff cannot establish first element of hostile work environment claim); *see also Saunders v. E.I. DuPont de Nemours & Co.*, No. 14- 329-RGA, 2017 WL 679853, at *5 (D. Del. Feb. 17, 2017) (granting summary judgment where plaintiff alleged hostile work environment due to race because supervisor had "negative energy," did not communicate well, gave menial tasks, and had black voodoo doll, concluding plaintiff's subjective beliefs – *the only support for plaintiff's claims* – were "insufficient to create a genuine issue of material fact"); *Williams v. Perry*, 907 F. Supp. 838, 847 (M.D. Pa. 1995), *aff'd,* 72 F.3d 125 (3d Cir. 1995) (concluding plaintiff failed to establish first element of hostile work environment claim, because plaintiff's subjective conclusions were insufficient to connect alleged "harassment" to plaintiff's protected class).

Indeed, Ms. Blough complains of not receiving account assignments, many of which were given to or maintained by another **female**. Accordingly, there is no evidence that Ms. Blough was not assigned prospective accounts or otherwise treated differently because of her sex.

In sum, the alleged conduct was facially neutral and unconnected to Ms. Blough's sex. Therefore, Ms. Blough cannot establish that she experienced sex-based harassment, and her hostile work environment claim fails.

### 3. A Reasonable Woman Would Not Have Been Detrimentally Affected by the Purported Harassment.

Ms. Blough also cannot show that a reasonable woman in the same situation would have been detrimentally affected by any of the treatment she alleges. The Supreme Court has held that Title VII is not violated by the "mere utterance of an ... epithet which engenders offensive feelings in an employee" or by mere "discourtesy or rudeness," unless so severe or pervasive as to constitute an objective change in the conditions of employment. *Faragher,* 524 U.S. at 787 (internal quotation marks and citations omitted). Ms. Blough points to nothing that would have detrimentally affected a reasonable woman. Further, Ms. Blough's complaints regarding Mr. Cruz were raised to two separate Human Resources professionals at BCD, and neither was able to substantiate any inappropriate conduct, indicating that the conduct raised to BCD's attention was not sufficient to constitute an objective change to Ms. Blough's conditions of employment. (DSOF ¶¶ 92, 109). Accordingly, Ms. Blough cannot establish the fourth prong of a hostile work environment claim.

### 4. Ms. Blough Was Not Constructively Discharged.

"Constructive discharge occurs when an employer knowingly permits conditions of discrimination. . . so intolerable that a reasonable person subject to them would resign." *Embrico v. U.S. Steel Corp.*, 245 Fed. App'x 184, 187 (3d Cir. 2007). As the Third Circuit has repeatedly explained:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably

> every resignation occurs because the employee believes that it is in
> his best interest to resign. Rather, intolerability . . . is assessed by
> the objective standard of whether a reasonable person in the
> employee's position would have felt *compelled* to resign – that is,
> whether he would have had no choice but to resign.

*Embrico*, 245 Fed. App'x at 190 (internal quotations omitted) (emphasis in original) (citing *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)); *compare Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502-03 (3d Cir. 2010) (no constructive discharge where employee alleged she was isolated, called "slow," restricted in her job duties, and the employer failed to react to her complaints).

The burden for establishing constructive discharge is "considerably high," *Tunis v. City of Newark*, 184 Fed. App'x 140, 142 (3d Cir. 2006), and it requires a showing over and above what is necessary for a hostile work environment. *Montgomery v. City of Pittsburgh*, 2017 WL 7940776, at *9 (W.D. Pa. Oct. 3, 2017), *report and recommendation adopted by* 2018 WL 1141733 (W.D. Pa. Mar. 2, 2018); *Williams v. Pennsylvania Hum. Rel. Comm'n*, 2016 WL 6834612, at *25 (W.D. Pa. Nov. 21, 2016), *aff'd*, 870 F.3d 294 (3d Cir. 2017) (summary judgment appropriate for employer where conduct does not even establish a hostile work environment because constructive discharge must go farther). Indeed, to establish that BCD constructively discharged her, Ms. Blough must show that at the time she resigned, "[an] abusive working environment became so intolerable that [her] resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 130 (2004); *Diviny v. Village of Cottage Green, Inc.*, No. CIV.A. 03-5096, 2004 WL 2473424, at *7 (E.D. Pa. Nov. 1, 2004) (same). Further, the Third Circuit held "the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1162 (3d Cir. 1993).

As discussed in Section III.B above, Ms. Blough has not presented evidence to support a

hostile work environment claim. That is enough to show she cannot prove constructive discharge. *See Wilson v. Blockbuster, Inc.*, 571 F. Supp. 2d 641, 649 (E.D. Pa. 2008) (granting summary judgment on constructive discharge claim after court found no hostile work environment claim because "[t]o prove a constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.").

The Third Circuit has identified six factors which may indicate constructive discharge: "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations." *Lebofsky v. City of Philadelphia*, 394 Fed. App'x 935, 939 (3d Cir. 2010). Here, Ms. Blough was never threatened with discharge, encouraged to resign, demoted, transferred to a less desirable position, her job responsibilities were not changed, and she did not receive unsatisfactory evaluations. As set forth in Section III.D., any reduction in her pay was temporary, a result of the impact of the COVID-19 pandemic on the travel industry which affected all sales employees, not just Ms. Blough. (ECF 69, ¶¶ 40-44; DSOF ¶ 72-75).

In *Duffy Paper Magic Group, Inc.*, the plaintiff argued that she was constructively discharged because she experienced a "continuous pattern of discriminatory treatment," including that she was passed over for promotions due to her age, her supervisors made negative remarks about her age, she was excluded from training seminars and work-related committees, she was the only employee whose performance was managed by a weekly "report card," and she was generally disrespected by and treated less favorably than other employees. 265 F.3d 163, 167-68 (3d Cir.

20

2001).[5] The Third Circuit rejected the plaintiff's claim and affirmed summary judgment for the employer because a "stressful and frustrating" work environment is not sufficient for constructive discharge – particularly where the facts show that the employee's job tasks were unchanged and she was not encouraged to resign from her position or involuntarily transferred to a position less favorable. *Id.* at 168-71 (citing *Clowes*, 991 F.2d at 1159). Like the plaintiff in *Duffy*, Ms. Blough cannot state a claim for constructive discharge due to her dissatisfaction with her prospective account pipeline.

Finally, the alleged conduct is facially neutral, as discussed in Section III.B.2., and therefore does not support a finding of intolerable work conditions based on Ms. Blough's sex. *See McWilliams v. Western Pa. Hosp.*, 717 F. Supp. 351, 355 (W.D. Pa. June 30, 1989) (holding "the discriminatory conduct must be associated in some fashion with the intolerable atmosphere leading to the constructive discharge . . . there must be at least some relation between the occurrence of the discriminatory conduct and the employee's resignation."). Accordingly, Ms. Blough cannot show that her working environment in 2021 was so intolerable that she had no choice but to resign, and her claim that she was subjected to gender discrimination that resulted in her constructive discharge must fail.

### C.    BCD Did Not Breach Any Contract with Ms. Blough.

Ms. Blough summarily contends that BCD breached the applicable Sales Incentive Plans ("SIPs"), stating that BCD failed to pay her full commission under the SIPs. (ECF 15, ¶¶ 32, 56-57). The only facts Ms. Blough alleges are related to the sales to Halliburton and Boston Scientific. (ECF 15, ¶ 32). Ms. Blough's claim fails because BCD modified the terms of the SIPs and she

---

[5] The plaintiff in *Duffy* asserted a claim under the ADEA. ADEA hostile work environment claims are analyzed under the same standards as Title VII hostile work environment claims. *See Slater v. Susquehanna Cty.*, 465 Fed. App'x 132, 138 (3d Cir. 2012.)

agreed to defer compensation pursuant to the SIPs, and ultimately resigned, before the commissions were earned and due to be paid. (ECF 69, ¶¶ 40-44).

Under the 2020 and 2021 SIPs that provided Ms. Blough with the ability to receive commissions in those years, the SIPs could be "amended, modified or terminated at any time by BCD Travel without prior notice." (ECF 69, ¶ 39). 66. During the COVID-19 pandemic, travel was restricted areas across the globe and as a result, BCD's income precipitously declined, as BCD generates much of its revenue based on travel transactions completed by its clients. (DSOF ¶ 70). Because BCD's global salespeople's commissions are largely based upon the generated travel transactions its clients make during the first 15 months of an engagement, BCD determined that as a result of the COVID-19 pandemic's impact on travel, its salespeople would be earning minimal, if any, commissions on corporate travel for a period of time during the pandemic. (ECF 69, ¶ 40; DSOF ¶ 71). As a result, both due to the lost income to the company and the loss of commissions for its salespeople, BCD made the decision to suspend the commission earning window for Q2 through Q4 of 2020. (ECF 69, ¶ 40). This essentially shifted the period of time in which commissions could be earned to a later date, so salespeople would be able to earn more in commissions as travel resumed and allowed the salespeople to benefit from returning travel transactions at a later date. (ECF 69, ¶¶ 39-40).

Ms. Blough agreed to the deferment of commissions under this program, and the suspension remained in place throughout the remainder of her employment. (ECF 69, ¶¶ 43-44). The SIPs required that Ms. Blough be an employee of BCD "on the date that commissions are paid to be eligible to receive that commission," and further state that "[a]ll unpaid sales commissions, bonuses and incentives are forfeited upon termination of employment for any reason." (ECF 69, ¶ 38). The deferral of commissions for these quarters was applied to all individual contributors

22

who earned commissions at BCD; it and was not limited to Ms. Blough. (ECF 69, ¶ 42).

Specifically with respect to Halliburton, Ms. Blough acknowledged in her deposition that she expected to start receiving commissions on the sale of Halliburton in May of 2020, but the deferral program went into effect in March of 2020 and was not lifted prior to her resignation from BCD. (DSOF ¶ 78; ECF 69, ¶ 44). Accordingly, Ms. Blough was not entitled to any commissions from Halliburton.

Ms. Blough also was not entitled to any commissions from the contract with Boston Scientific. Under the terms of the SIPs that provided Ms. Blough with the ability to receive commissions in 2020 and 2021, commissions will not be paid in the first six months of ticketing until there is a fully executed customer contract. (ECF 69, ¶ 37). The contract for Boston Scientific had not been signed prior to Ms. Blough's termination, and it was not signed until April 2022, thus she was not eligible to receive any commissions as a result of that sale. (DSOF ¶ 79).

Because Ms. Blough was not entitled to any commissions for the Halliburton or Boston Scientific sales, or any other sales, her breach of contract claim fails.

### D.    Blough Cannot State a Claim for Violation of the Equal Pay Act.

Ms. Blough alleges summarily that "[b]y paying the male comparators more on commissions, BCD Travel violated the [Equal Pay Act]," and that the disparity in commissions paid to two equal level Vice Presidents was "due to gender." (ECF 15 ¶ 60). Under the EPA, "an employer is proscribed from discriminating, on the basis of gender, by paying lower wages to employees of one gender than those paid to employees of the other gender who are performing equal work on jobs that require equal skill and responsibility." *Gaul v. Zep Mfg. Co.*, Civ. A. No. 03-2439, 2004 WL 234370, at *3 (E.D. Pa. Jan. 30, 2004) (citing 29 U.S.C. § 206(d)(1)). To establish a *prima facie* case of an EPA claim, "a plaintiff must show that her employer has paid lower wages to her than to males for equal skill, effort and responsibility under similar working

23

conditions." *Id*. (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000)). Ms. Blough's claims fail as Ms. Blough did not have any proper male comparators, and even if she did, the EPA does not protect against workload discrimination.

### 1.    Ms. Blough Cannot Show Any Proper Male Comparators Existed Within an Establishment.

Section 206(d) of the EPA provides:

> No employer having employees subject to any provisions of this section shall discriminate, ***within any establishment*** in which such employees are employed, between employees on the basis of sex by paying wages to employees **in such establishment** at a rate less than the rate at which he pays wages to employees of the opposite sex **in such establishment** for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1) (emphasis added). Thus, in order to establish a violation of the EPA, "those employees against whom plaintiff compares herself must work in the same 'establishment' as the claimant." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994).

Although the statute itself does not define "establishment," regulations provide, in relevant part:

> [T]he term "establishment" ... refers to a distinct physical place of business rather than to an entire business or "enterprise" which may include several separate places of business. ***Accordingly, each physically separate place of business is ordinarily considered a separate establishment.***

29 C.F.R. § 1620.9(a) (emphasis added; *see also Fugitt v. CertainTeed Corp.*, No. 92-5083, 1993 WL 147281, at *2 (E.D. Pa. May 6, 1993) ("An establishment is a distinct physical place of business, rather than an entire business or enterprise") (citing 29 C.F.R. § 1620.9(a)). They further

recognize that it would only be under "unusual circumstances" that two or more distinct physical portions of a business would be treated as a single establishment. 29 C.F.R. § 1620.9(b)[6].

Ms. Blough was a remote Vice President, Global Sales who lived in Western Pennsylvania who earned a base salary plus commissions for sales she made for BCD. (DSOF ¶¶ 13, 15, 16). As such, there were no other male Vice Presidents, Global Sales who worked within the same establishment as Ms. Blough, and there are no proper comparators for her EPA claim. (DSOF ¶¶ 27-28). Ms. Blough cannot set forth any evidence that there is an "unusual circumstance" that applies here. Accordingly, she can show no similarly situated male Vice President, Global Sales,[7] who worked in the same establishment, was paid more than her for doing similar work. Neither of the two male Vice Presidents of Global Sales she identifies as comparators lived near Ms. Blough or worked in the same establishment, as Sachin Sekhri lived in New Jersey and Mark O'Brien lived in the United Kingdom. (DSOF ¶ 28). Accordingly, since Ms. Blough cannot establish that she was subjected to disparate pay compared to male employees who worked in the same establishment, her EPA claim must fail.

### 2. The EPA Does Not Protect Against Inequitable Work Assignments.

Even if she could establish that these comparators and Ms. Blough worked in the same establishment, which BCD denies, her EPA claims still should be dismissed. Ms. Blough's EPA

---

[6] Ms. Blough does not have any evidence to support a claim that any such unusual circumstances exist here. There is no evidence regarding how salaries were set for Ms. Blough, Mr. Sekhri or Mr. O'Brien, no evidence as to whether there was any differentiation in their pay, benefits, or working conditions based on their work locations in Pennsylvania, New Jersey, and in the United Kingdom, respectively, no evidence that BCD assigned where they were to be based to work remotely, and no evidence that they frequently interchanged their work locations that could support a conclusion that they worked in the same establishment for purposes of the EPA.

[7] Ms. Blough's EPA claim appears to be limited to "VPs" pursuant to Paragraph 60 of the Amended Complaint; it does not include the other purported comparators (Ton Maanicus and Nick Dewey) she included in her Title VII claims.

claims are based on the assignment of prospective accounts to Ms. Cruz and two other male sales employees, and her conclusory allegations that "[b]y paying the male comparators more on commissions, BCD Travel violated the [Equal Pay Act]," and that the disparity in commissions paid to two equal level Vice Presidents was "due to gender" fails to identify any male comparator who earned more in commission sales than she did. (ECF 15 ¶ 60). Ms. Blough does not contend that her salary was lower or that her commission plans were less favorable than these two male Vice Presidents, Global Sales, just that they received what she believed to be more or more promising prospects. Indeed, her reliance on the alleged disparity in opportunities to earn commissions is fatal to her claim, as the EPA does not provide relief for purported discriminatory work assignments that result in a difference of income. *See Berry v. Board of Sup'rs of L.S.U.*, 715 F.2d 971, 978 (5th Cir. 1983) (holding that the EPA does not protect against "workload discrimination"); *Caetio v. Spirit Coach*, *LLC,* 992 F. Supp. 2d 1199, 1213 (N.D. Ala. 2014) ("the Equal Pay Act does not provide relief for allegations of discriminatory work *assignments*.") (emphasis in original).

In *Caetio*, the female plaintiffs who worked as tour bus drivers, alleged that the defendant assigned male tour bus drivers to more lucrative driving assignments, *i.e.*, those requiring more work hours, resulting in greater pay for the male drivers. 992 F. Supp. 2d at 1203. On a motion to dismiss, the court determined that the plaintiffs had not asserted that they were paid at a *rate* less than the male drivers and dismissed their EPA claim. Likewise, here, Ms. Blough cannot show that any male Vice President, Global Sales earned a commission rate higher than she did, and her EPA claim fails.

## IV.    CONCLUSION

For all of the reasons set forth herein, the Court should grant BCD's Motion for Summary Judgment and dismiss Ms. Blough's Amended Complaint in its entirety, with prejudice.

26

Dated: September 19, 2025                    Respectfully submitted,

                                            */s/ Katelyn W. McCombs*
                                            Mark T. Phillis (PA No. 66117)
                                            mphillis@littler.com
                                            Katelyn W. McCombs (PA No. 323746)
                                            kmccombs@littler.com

                                            LITTLER MENDELSON, P.C.
                                            One PPG Place, Suite 2400
                                            Pittsburgh, PA 15222
                                            PH: 412.201.7636 /7641
                                            FAX: 412.774.3756

                                            *Attorneys for Defendant*
                                            *BCD Travel USA LLC*

27

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2025, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT was filed using the Western District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

> Kathryn L. Simpson
> METTE, EVANS & WOODSIDE, P.C.
> 3401 N. Front Street
> P.O. Box 5950
> Harrisburg, PA 17110
> klsimpson@mette.com
>
> Gary D. Abrams
> Gary D. Abrams & Associates, LTD
> 55 West Monroe Street
> Telephone: 312.263.4085
> Gda2164@gmail.com

*/s/ Katelyn W. McCombs*
Katelyn W. McCombs

4930-5003-8368