**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TRUDY BLOUGH,

          Plaintiff,

    v.

BCD TRAVEL USA LLC.

          Defendant.

Civil Action No. 2:23-cv-01979-MPK

Hon. Maureen P. Kelly

*Electronically Filed*

**<u>DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSES TO DEFENDANT'S CONCISE
STATEMENT OF MATERIAL FACTS</u>**

Defendant BCD Travel USA LLC ("BCD"), pursuant to Rule 56 of the Federal Rules of
Civil Procedure and Rule 56 of the Local Rules of the Court of the Western District of
Pennsylvania, files this Reply to Plaintiff Trudy Blough's Responses to Defendant's Concise
Statement of Material Facts (ECF 74).

Plaintiff effectively admits all statements of material fact contained in BCD's Statement of
Material Facts ("DSOF").[1] While throughout her Response to BCD's Concise Statement of
Material Facts, Plaintiff purports to deny in whole or in part material facts set forth by BCD in its
DSOF or material facts that Plaintiff agreed to as undisputed in the Parties' Joint Statement of
Facts (ECF 69),[2] she fails to point to **any** record evidence to support these purported disputes in
her responses with the exception of her responses to Paragraphs 1, 23, and 58[3]. Plaintiff cites to
no evidence in the record to support her stated "denials" of any material fact submitted by BCD

---

[1] References to "DSOF" refer to BCD's Statement of Material Facts (ECF 73).

[2] References to "JSOF" refer to the Parties' Joint Statement of Undisputed Facts (ECF 69).

[3] In Paragraph 58, Plaintiff cites to a page in the deposition transcript, not to the location of the
page of that transcript in any appendix filed with this Court as required by this Court's order. (ECF
68).

other than in those three paragraphs, and as a result, all facts set forth in the DSOF. *See* Fed. R. Civ. P. 56(c), (e). Local Rule 56.C requires a plaintiff, when identifying any portion of a material fact in dispute in her response, to "set[] forth the basis for the denial … with appropriate reference to the record." LCvR 56.C.1.b. Further, the Court's Summary Judgment Scheduling Order specifically requires that "any Concise Statement of Material Facts or response thereto must include ECF citations to the Joint Statement of Undisputed acts or an Appendix filed on the docket in advance of the particular filing," and "all references to evidence made in the parties' respective briefs and statements of material facts should be supported by pinpoint ECF citations to the record evidence included in the appendix." (ECF 68). Plaintiff does not do so for any of her purported denials, as she cites to no record evidence in support of any assertions made in her Responses.

Accordingly, the Court should deem admitted all statements of material fact in BCD's SOF. See LCvR 56.E; *REVZIP, LLC v. McDonnell*, No. 3:19-CV-191, 2023 WL 3260662, at \*12-14 (W.D. Pa. May 4, 2023) (adopting all of defendant's facts not clearly disputed by plaintiff with adequate references to the record). Therefore, every fact asserted by BCD should be deemed admitted either because Plaintiff has admitted them or she has not proffered any record evidence to dispute them. Thus, the Court should consider the entirety of BCD's DSOF as admitted.

<u>**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE**</u>

## I.    BCD'S BUSINESS

1.    BCD is a global corporate travel management company primarily servicing corporate customers in the making of travel arrangements and providing corporate travel

4911-9274-4308

management services. (Declaration of Jorge Cruz ("Cruz Decl.") (App. at ECF 70-5, p. 2)[4], ¶ 3; Deposition of Michael Janssen ("Janssen Dep.") (App. at ECF 70-1, p. 4), 6:12-18; Joint Statement of Undisputed Facts ("JSOF"), ECF 69, ¶ 1).

**Plaintiff's Response: Admitted this fact was included in the Joint Statement of Undisputed Facts. (DSOF ¶1; JSOF ¶1.)**

2.    BCD is an equal opportunity employer and maintains an Equal Employment Opportunity/Affirmative Action Policy, which states in relevant part: "It is our policy that no employee or applicant will be discriminated against because of race, color, religion, political opinion, sex, national or social origin, age, marital status, genetic information, disability or because he or she is a protected veteran." (Declaration of Ursula Dvorkin ("Dvorkin Decl.") (App. at ECF 70-6, pp. 2, 6-7), ¶ 4, Exhibit 1).

**Plaintiff's Response: Admitted that BCD has an Equal Employment Opportunity/ Affirmative Action Policy; denied that it followed that Policy in dealing with Plaintiff's complaints.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 2, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 2. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 2; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 2 is undisputed and should be deemed admitted.

---

[4] Pursuant to the Court's August 4, 2025 Summary Judgment Scheduling Order, references to "App. at ECF __" refers to the location of the evidence set forth in Defendant's Appendix of Record Evidence in Support of its Motion for Summary Judgment filed on September 18, 2025 at ECF 70.

4911-9274-4308

3.      BCD also maintains a Harassment Policy, which states in relevant part: "In accordance with applicable law, we prohibit sexual harassment and harassment because of race, color, national origin, ancestry, religion, creed, sexual orientation, physical or mental disability, marital status, medical condition, veteran status, age, or any other basis protected by federal, state, or local law. All such harassment is unlawful and will not be tolerated." (Dvorkin Decl. (App. at ECF 70-6, pp. 2-3, 8-9), ¶ 5, Exhibit 2).

**Plaintiff's Response: Admitted that BCD has a Harassment Policy; denied that it was applied or enforced in Plaintiff's case; no corrective action was taken despite complaints.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 3, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 3. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 3; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 3 is undisputed and should be deemed admitted.

4.      Ms. Blough acknowledged that she had received a copy of BCD's Employee Handbook, which contains BCD's Equal Employment Opportunity/Affirmative Action Policy, when she started her employment with BCD. (Deposition of Trudy Blough ("Blough Dep.") (App. at ECF 70-2, pp. 48, 66), 174:8-22, Exhibit 14; JSOF (ECF 69) ¶ 2).

**Plaintiff's Response: Admitted that Plaintiff acknowledged receipt of the Handbook.**

*Defendant's Reply*: The entirety of DSOF ¶ 4 was contained in JSOF ¶ 2, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 4, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 4. Accordingly, DSOF ¶ 4 is undisputed and should be deemed admitted.

5.       BCD has operations, sales employees and clients in locations across the globe including North and South America, Europe, Africa, Middle East and Asia. (Cruz Decl. (App. at ECF 70-5, p. 2), ¶ 4).

**Plaintiff's Response: Admitted as generally accurate; immaterial to dispositive issues.**

*Defendant's Reply*: Plaintiff admits DSOF ¶ 5 and has not pointed to any specific part of the record that disputes any part of DSOF ¶ 5. Accordingly, DSOF ¶ 5 is undisputed and should be deemed admitted.

6.       Moreover, BCD services clients in diverse industries, including media and entertainment, aerospace and defense, energy, and life sciences. (Cruz Decl. (App. at ECF 70-5, p. 2), ¶ 5).

**Plaintiff's Response: Admitted as generally accurate; immaterial to dispositive issues.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 6 and has not pointed to any specific part of the record that disputes any part of DSOF ¶ 6. Accordingly, DSOF ¶ 6 is undisputed and should be deemed admitted.

7.       In global sales, BCD utilizes a team-selling approach, meaning that there is often a global sales lead assigned to a prospect, but other BCD employees are assigned to the team to help secure the business and drive growth through collaboration. For example, in many cases a regional BCD employee is assigned to a specific client to help develop and drive the strategy in that specific region. Under the team-selling approach, the team could include specific industry and subject matter experts and others in the organization who have existing relationships with prospective

4911-9274-4308

clients. (Deposition of Jorge Cruz ("Cruz Dep.") (App. at ECF 70-3, pp. 5, 15, 20-21), 13:11-21, 59:5-18, 76:18-77:3; JSOF (ECF 69) ¶ 3; Cruz Decl. (App. at ECF 70-5, p. 3), ¶ 8).

**Plaintiff's Response: Admitted that team-selling occurred; denied that it was applied equitably. Composition and leadership were used to marginalize Plaintiff's lead role on key bids.**

*Defendant's Reply*: The entirety of DSOF ¶ 7 was contained in JSOF ¶ 3, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 7, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 7. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 7; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 7 is undisputed and should be deemed admitted.

8.    BCD's practice of assigning current or prospective client accounts to its global sales teams takes into consideration multiple factors. (Cruz Dep. (App. at ECF 70-3, pp. 6-7, 9-10), 21:9-22:21, 49:21-50:10; Janssen Dep. (App. at ECF 70-1, pp. 5-6), 11:25-12:9; JSOF (ECF 69) ¶ 4).

**Plaintiff's Response: Admitted in part/Denied in part. The paper criteria existed but were not applied neutrally; preferential assignments were made to male peers and to Mr. Cruz's spouse. While BCD articulates multiple "factors," the assignment process did not follow any consistent, objective standard in practice. Instead, assignments were made ad hoc and for the convenience of internal preferences and agendas. Mr. Cruz exercised unfettered discretion to pick and choose- diverting high-value opportunities to his spouse and male peers-while disregarding Ms. Blough's repeated requests to review and correct her**

6

**inadequate pipeline. The cited "factors" were therefore not applied neutrally or uniformly to Ms. Blough (e.g., Cruz's prompt approval of Deb Cruz's ten-account list in July 2018, contrasted with his seven-month delay in approving Susan Altman's ten-account list despite multiple follow-ups, and the assignment of dormant or no-relationship accounts to Ms. Blough).**

*Defendant's Reply*: The entirety of DSOF ¶ 8 was contained in JSOF ¶ 4, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 8, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 8. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 8; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 8 is undisputed and should be deemed admitted.

9.      Prospective accounts or opportunities are assigned to employees or sales teams based on several different factors, including but not limited to: an employee/sales team's geographic proximity to a client's principal location and the location of the decisionmaker; the timing of a request for proposal for the prospective client; the salesperson's experience with and knowledge of the client or prospect and its industry; previously established client relationships; and the salesperson's overall sales seniority/experience, current workload/bid activity, and work history, with no single factor being dispositive. (Cruz Decl. (App. at ECF 70-5, p. 3), ¶ 9; Cruz Dep. (App. at ECF 70-3, pp. 6-7, 9-10), 21:9-22:21, 49:21-50:10; Janssen Dep. (App. at ECF 70-1, pp. 5-6), 11:25-12:9).

**Plaintiff's Response: Admitted in part/Denied in part. The stated criteria do not explain patterns where O'Brien's high-value accounts and other major opportunities were diverted to males and Ms. Cruz while Plaintiff received none.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 9, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 9. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 9; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 9 is undisputed and should be deemed admitted.

10.    Additionally, when a salesperson leaves the Company, a portion of that salesperson's pipeline generally remains unassigned to ensure that there will be prospects for the salesperson who is hired to fill that position, though accounts with imminent bids or active bids in progress typically would be reassigned to an existing salesperson. (Cruz Dep. (App. at ECF 70-3, p. 17), 61:13-17; JSOF (ECF 69) ¶ 5).

**Plaintiff's Response: Admitted in part/Denied in part. While portions of the practice are accurate, it was not applied in 2021 when O'Brien's high-value accounts went to male colleagues and Deb Cruz, with none to Plaintiff.**

*Defendant's Reply*: The entirety of DSOF ¶ 10 was contained in JSOF ¶ 5, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 10, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 10. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 10; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 10 is undisputed and should be deemed admitted.

4911-9274-4308

## II.    PLAINTIFF'S EMPLOYMENT WITH BCD

11.    Ms. Blough began her employment with BCD in February of 2012 as an Account Manager and was promoted to Director, Regional Sales – Northeast Territory in June 2014. (Blough Dep. (App. at ECF 70-2, pp. 50-53), Exhibit 1; JSOF (ECF 69) ¶ 6).

**Plaintiff's Response: Admitted.**

12.    In that role, prospects were identified for the directors based on where the client was located; sometimes determined by where the company's headquarters were located and sometimes determined by where the travel manager was located. (Blough Dep. (App. at ECF 70-2, pp. 4-5), 35:22-36:2; JSOF (ECF 69) ¶ 7).

**Plaintiff's Response: Admitted in part/ Denied in part. In Plaintiff's prior Regional Sales Director role under Rossana Martin, BCD followed a clear, neutral protocol: prospects were assigned based on geography and the location of the decision-maker/travel manager, and that protocol was applied consistently. Denied to the extent BCD suggests a uniform, objective methodology governed all assignments beyond the regional protocol. Outside the regional context, BCD did not adhere to any set standard; assignments were made ad hoc for internal convenience and preferences, with Mr. Cruz exercising discretionary, convenience-based choices despite Plaintiff's repeated requests to review and correct her inadequate pipeline (as detailed in later paragraphs).**

*Defendant's Reply*: The entirety of DSOF ¶ 12 was contained in JSOF ¶ 7, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 12, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 12. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not

4911-9274-4308

responsive to the statement of fact in DSOF ¶ 12; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 12 is undisputed and should be deemed admitted.

13.    Ms. Blough was promoted to the Vice President, Global Sales position on or about July 9, 2018. (Blough Dep. (App. at ECF 70-2, pp. 13, 50-53), 64:18-20, Exhibit 1; Offer Letter, ECF 21-2, p. 2; JSOF (ECF 69) ¶ 8).

**Plaintiff's Response: Admitted.**

14.    Ms. Blough was offered the Vice President, Global Sales position after interviewing with Jorge Cruz, Executive Vice President, Global Sales and Marketing, and speaking with Debra Cruz, Vice President, Global Sales, and Mark O'Brien, Vice President, Global Sales. (Blough Dep. (App. at ECF 70-2, p. 7), 55:5-15; Cruz Dep. (App. at ECF 70-3, pp. 3-4), 4:24-5:1; JSOF (ECF 69) ¶ 9).

**Plaintiff's Response: Admitted.**

15.    She had an annual salary, and she was eligible to earn commissions. (Offer Letter, ECF 21-2, p. 2; JSOF (ECF 69) ¶ 10).

**Plaintiff's Response: Admitted.**

16.    In that role, Ms. Blough worked remotely from the greater Pittsburgh area and reported to Mr. Cruz. (Cruz Decl. (App. at ECF 70-5, p. 4), ¶ 15; Offer Letter, ECF 21-2, p. 2; JSOF (ECF 69) ¶ 11).

**Plaintiff's Response: Admitted.**

4911-9274-4308

17.    Ms. Blough did not have any previous experience in global sales when she was offered the Vice President, Global Sales role. (Cruz Dep. (App. at ECF 70-3, pp. 22), 84:7-20; Cruz Decl. (App. at ECF 70-5, p. 4), ¶ 16).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Plaintiff had not previously held BCD's Vice President, Global Sales title. Denied that she lacked relevant global-sales experience. While serving as Director, Regional Sales - Northeast under Rossana Martin, Plaintiff pursued and won multi-national opportunities for global companies year over year, coordinating across regions with global teams and managing those accounts to successful close. Her sustained performance-surpassing sales targets and earning BCD's Circle of Excellence recognition for three consecutive years leading up to her promotion-was the basis for her selection to the VP, Global Sales role. The statement that she had "no previous experience in global sales" is therefore misleading and overbroad; at most, she had not yet held BCD's internal VP title.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 17, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 17. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 17; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 17 is undisputed and should be deemed admitted.

18.    Before Ms. Blough was offered the position, Mr. Cruz told Ms. Blough that in order to be successful in this new role, she would need to develop her sales skills. (Cruz Decl. (App. at ECF 70-5, p. 4), ¶ 17).

4911-9274-4308

**Plaintiff's Response: Denied. BCD's decision to promote Plaintiff to Vice President, Global Sales is irreconcilable with the claim that she first needed to "develop her sales skills." There is no contemporaneous documentation of any such conversation-no email, memorandum, training plan, or performance-improvement plan-and no formal development plan was ever created or implemented for Ms. Blough. Immediately after the promotion, Mr. Cruz identified and placed in Plaintiff's portfolio what he characterized as global opportunities (many of which later proved dormant or non-viable or were withheld/redirected). Even so, that contemporaneous designation reflects BCD's assessment at the time that Plaintiff could perform the role without any precondition. Mr. Cruz's litigation-era account is uncorroborated and inconsistent with BCD's own promotion and portfolio-assignment actions.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 18. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 18; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 18 is undisputed and should be deemed admitted.

19.    In making the decision to hire Ms. Blough, Mr. Cruz believed that she would do well in the position despite her lack of global sales experience. (Cruz Decl. (App. at ECF 70-5, p 4), ¶ 19).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted only that Mr. Cruz approved Plaintiff's promotion to Vice President, Global Sales. Denied that Plaintiff "lacked global sales experience" or required remedial development. In her Regional Sales Director**

4911-9274-4308

**role under Rossana Martin, Plaintiff originated and managed multi-national opportunities for global companies year-over-year, coordinated cross-region teams, exceeded sales targets, and earned BCD's Circle of Excellence three consecutive years leading up to the promotion, all of which formed the basis for selecting her for the VP role. There is no contemporaneous documentation of any pre-offer "skill-development" requirement (no email, memo, plan, or PIP), and immediately after promotion Mr. Cruz placed what he characterized as global opportunities in Plaintiff's portfolio (even if many later proved dormant), confirming BCD's view at the time that she could perform the role without preconditions. To the extent Defendant now relies on a purported "lack of global experience," it is litigation-driven spin inconsistent with BCD's promotion decision and portfolio assignments.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 19, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 19. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 19; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 19 is undisputed and should be deemed admitted.

20.    Ms. Blough's job duties included soliciting prospective clients and selling BCD products and services for corporate travel needs. (Cruz Decl. (App. at ECF 70-5, p. 4), ¶ 21).

**Plaintiff's Response: Admitted.**

21.    When Ms. Blough started in this new role in 2018, she retained accounts from her Regional Sales Director position in her pipeline where a request for proposal was active. (Blough Dep. (App. at ECF 70-2, p. 8-9), 56:18-57:6; JSOF (ECF 69) ¶ 12).

13

**Plaintiff's Response: Admitted.**

22.    At Mr. Cruz's direction in the fall of 2018, Debra Cruz and Susan Altman, both Vice Presidents of Global Sales, also gave her five prospects in their sales pipeline. (Blough Dep. (App. at ECF 70-2, pp. 11, 54-57), 59:15-24, Exhibit 5; JSOF (ECF 69) ¶ 13).

**Plaintiff's Response: Denied. Jorge Cruz instructed both Deb Cruz and Susan Altman to each transfer ten accounts to Plaintiff. Deb Cruz stated she was 'giving 10 of [her] more than 40 accounts,' which Jorge promptly approved in July 2018. He did not approve Altman's list until February 2019-despite multiple follow-ups from Altman in September 2018 (two emails) and again in February 2019, and Plaintiff's repeated notices that many proposed accounts were nonviable based on Salesforce activity, lack of relationships, or geography. Plaintiff's pipeline remained effectively empty during this delay while male peers received commission-eligible opportunities.**

*Defendant's Reply*: All of DSOF ¶ 22 except for "in the fall of 2018" was contained in JSOF ¶ 13, thus those portions are undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 22. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 22; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 22 is undisputed and should be deemed admitted.

23.    In addition, Ms. Blough received new sales prospects from Mr. Cruz throughout the remainder of her employment. (Cruz Decl. (App. at ECF 70-5, p. 5), ¶ 24).

4911-9274-4308

**Plaintiff's Response: Admitted in part/Denied in part. Plaintiff received some additional prospects; however, the assertion that they were assigned "throughout the remainder of her employment" is misleading. Plaintiff's Salesforce pipeline did not materially change after 2019, and when high-value opportunities became vacant (e.g., after Mr. O'Brien's departure in 2021) they were reassigned to others; Defendant's own CSMF shows those accounts going to Sekhri, Maanicus, and Dewey, with the only new assignment to Plaintiff being Schlumberger on May 27, 2021. ECF 73 ¶¶ 62-66 (Schlumberger at ¶ 65).**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 23, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 23. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 23; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 23 is undisputed and should be deemed admitted. To the extent the Court deems a response to Plaintiff's assertion that Defendant's own filing shows that when Mr. O'Brien left the company in 2021, Mr. O'Brien's accounts were reassigned to Messrs. Sekhri, Maanicus, and Dewey, and Ms. Blough was assigned only Schlumberger, BCD admits that like Ms. Blough, Messrs. Sekhri, Maanicus, and Dewey each were assigned one of Mr. O'Brien's accounts when he left BCD. (ECF 73; DSOF ¶¶ 63, 65).

24.    Ms. Blough was assigned accounts and prospective clients to her pipeline through her employment with BCD as Vice President, Global Sales or was allowed to maintain these prospects or accounts after being promoted to the Vice President role. (Cruz Decl. (App. at ECF 70-5, pp. 5-6), ¶¶ 25-26; Blough Dep. (App. at ECF 70-2, pp. 8-9), 56:18-57:6).

**Plaintiff's Response: Admitted.**

25.    While in the Vice President role, Mr. Cruz assigned the following prospective clients/opportunities to Ms. Blough for purposes of her pipeline:

| Opportunity | Assignment Date |
|---|---|
| Avaya | 4/15/2019 |
| BlackRock | 7/23/2018 |
| Becton Dickinson | 9/1/2018 |
| Boston Scientific | 9/4/2019 |
| Colgate-Palmolive | 7/23/2018 |
| Dell | 7/23/2018 |
| Ecolab | 5/1/2019 |
| Eli Lilly | 7/23/2018 |
| Estee Lauder Global | 7/1/2018 |
| Halliburton | 6/25/2018 |
| John Deere | 5/15/2019 |
| Johnson & Johnson | 5/14/2019 |
| Kimberly Clark | 5/15/2019 |
| Koch Holdings | 3/11/2019 |
| KPMG Americas | 7/1/2018 |
| Medtronic | 5/15/2019 |
| Morgan Stanley | 8/29/2019 |
| Novo Nordisk | 4/16/2019 |
| Publicis Global | 4/8/2019 |
| SAIC | 4/25/2019 |
| Schlumberger | 5/27/2021 |
| Technip FMC | 11/1/2019 |
| Thomson Reuters | 7/23/2018 |
| Walmart | 7/3/2018 |

(Cruz Decl. (App. at ECF 70-5, p. 5), ¶ 25; Blough Dep. (App. at ECF 70-2, pp. 12-21), 63:19-72:13).

**Plaintiff's Response: Denied. The list BCD relies upon to claim that accounts and prospective clients were assigned "throughout Plaintiff's employment" is misleading and incomplete. The assignment dates provided by BCD do not align with when those opportunities were actually placed in Plaintiff's pipeline, nor is there any contemporaneous**

16

**documentation to support the claimed timing. The list of "assigned" accounts included dormant or closed prospects, and most did not translate into viable, commission-eligible bids. Of the 24 accounts identified by Defendant, 21 are accounted for as follows:**

**8 transferred from Deb Cruz (per email exchange with Jorge Cruz, in which Ms. Cruz stated, "here are 10 of my 40 or so prospects that I have either not made any progress with, are in the tri- state area (NJ/NYIPA), and/or I don't feel like I had a good bond with, that I would like to consider giving up to be able to focus on the upper-end CTI 00 prospects in my pipeline");**

**6 transferred from Susan Altman (per email exchange with Jorge Cruz). After reviewing the assigned accounts in Salesforce, Plaintiff promptly raised concerns that the Altman transfers were not viable opportunities because they showed no active history, engagement, or revenue potential. Jorge Cruz acknowledged Plaintiff's email and replied that they would "discuss," but repeatedly postponed and never held that discussion; 4 were North America support-only opportunities where Plaintiff was not the lead; 2 were moved to the retention team; and 1 was transferred with Plaintiff's promotion.**

**These communications demonstrate that the accounts transferred to Plaintiff were selected because they were non-strategic, dormant, or low-potential, and that Plaintiff's documented concerns were ignored despite acknowledgment by leadership. There is no contemporaneous Salesforce or documentary evidence showing that any viable new accounts were subsequently assigned to Plaintiff. The record instead reflects that her pipeline remained stagnant while higher-value opportunities were reassigned to others.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 25. Moreover, the additional narrative included in Plaintiff's Response is

improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 25; therefore, no further response to the narrative is required. Moreover, the narrative included in Plaintiff's response contains admissions that certain of these accounts were transferred, so a blanket denial of DSOF ¶ 25 is improper. Accordingly, DSOF ¶ 25 is undisputed and should be deemed admitted.

26.    Additionally, Ms. Blough was assigned the following accounts while in her Regional Sales Director role under Rossana Martin and was permitted to remain the lead salesperson after her promotion to Vice President, Global Sales: Air Products, Bain & Company, Boehringer Ingelheim, Cigna, CVS Health, L Brands, Massachusetts Mutual Life Insurance, Paraxel, State Street Corporation, Thermo Fisher Scientific, UPS, and XL Catlin. (Blough Dep. (App. at ECF 70-2, pp. 10-11), 58:18-59:4; JSOF (ECF 69) ¶ 14; Cruz Decl. (App. at ECF 70-5, p. 5-6), ¶ 26).

**Plaintiff's Response: Admitted in part/Denied in part. While Plaintiff retained regional accounts, they were not comparable in scale or value to those distributed to Ms. Cruz and male peers; major global bids excluded Plaintiff while others received the opportunities.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 26, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 26. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 26; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 26 is undisputed and should be deemed admitted.

18

27. The other Vice Presidents in Global Sales were located around the world. (Blough Dep. (App. at ECF 70-2, p. 7-8), 55:16-56:8; JSOF (ECF 69) ¶ 15).

**Plaintiff's Response: Admitted.**

28. Specifically, Susan Altman lived in Chicago, Ms. Cruz lived in California, Vanessa Moore lived in Australia, Mark O'Brien lived in the United Kingdom, and Sachin Sekhri lived in New Jersey. (Cruz Decl. (App. at ECF 70-5, p. 6), ¶¶ 28-29; Blough Dep. (App. at ECF 70-2, pp. 7-8), 55:16-56:8).

**Plaintiff's Response: Admitted.**

29. The locations of the Vice Presidents in Global sales were strategic to maximize sales opportunities for BCD. (Cruz Decl. (App. at ECF 70-5, p. 6), ¶ 27).

**Plaintiff's Response: Admitted in part/Denied in part. While VPs were geographically dispersed, proximity was not applied consistently; accounts (e.g., GE, Bank of America, BAE, Goldman Sachs, and Mars) were assigned across regions contrary to the stated criterion.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 29, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 29. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 29; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 29 is undisputed and should be deemed admitted.

30.     Andy Menkes, Senior Vice President, Global Client Solutions, was assigned to the sales teams for prospective clients UPS and Becton Dickinson. (Janssen Dep. (App. at ECF 70-1, pp. 9-10), 15:22-16:12; Deposition of Andrew Menkes ("Menkes Dep.") (App. at ECF 70-4, p. 4), 10:7-10; JSOF (ECF 69) ¶ 16).

**Plaintiff's Response: Denied. Menkes was not mere 'support' but an override of Plaintiff's leadership on UPS and BD; he reported to Janssen rather than to the assigned sales lead, creating a conflict of authority.**

*Defendant's Reply*: The entirety of DSOF ¶ 30 was contained in JSOF ¶ 16, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 30. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 30; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 30 is undisputed and should be deemed admitted.

31.     Mr. Menkes was assigned to the sales teams for these prospective client accounts in order to support Ms. Blough's sales efforts and to put the Company in the best place to win new business. (Cruz Decl. (App. at ECF 70-5, p. 6), ¶ 30).

**Plaintiff's Response: Denied. Menkes operated at parity with VP-level leadership without quotas or commission accountability, undercutting Plaintiff's role and commissions.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 31. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement

of fact in DSOF ¶ 31; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 31 is undisputed and should be deemed admitted.

32.    Mr. Menkes is a consultant in the travel industry. BCD hired him as an employee of BCD with an employment contract for approximately two years from 2018-2020 to help BCD support its sales teams and to utilize Mr. Menkes's relationships in the industry to assist BCD in winning bids. (Janssen Dep. (App. at ECF 70-1, pp. 7-9), 13:21-23, 14:24-15:7; Menkes Dep. (App. at ECF 70-4, pp. 3-5), 7:12-16, 10:4-6, 11:1-3; JSOF (ECF 69) ¶ 17).

**Plaintiff's Response: Admitted.**

33.    Mr. Menkes was added to sales teams of prospective clients with which he had a previous relationship in his capacity as a consultant, as he was able to add value through his connections. (Cruz Decl. (App. at ECF 70-5, p. 6), ¶ 32).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that BCD claims Andy Menkes was added to sales pursuits as a consultant to provide support and leverage his industry relationships. Denied that this was how his role functioned in practice for UPS and Becton Dickinson. In those opportunities, Mr. Cruz expressly instructed Plaintiff to yield to Mr. Menkes, making him the front person and strategic lead on the bids rather than a supporting consultant. Mr. Menkes directed client strategy and communications while Plaintiff was excluded from key decisions and stripped of authority to manage the process, contrary to BCD's stated "team-selling" protocol. This deviation from policy caused confusion internally and undermined Plaintiff's ability to control the opportunities, which were ultimately lost.**

21

4911-9274-4308

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 33, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 33. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 33; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 33 is undisputed and should be deemed admitted.

34.     Mr. Menkes did not have the same position as Ms. Blough, had no sales quota, earned no commissions, and reported directly to Michael Janssen, Chief Commercial Officer. (Janssen Dep. (App. at ECF 70-1, pp. 3, 8-10), 5:16-17, 14:24-15:13, 16:17-24; Menkes Dep. (App. at ECF 70-4, pp. 5-6), 11:20-12:2; JSOF (ECF 69) ¶ 18).

**Plaintiff's Response: Admitted.**

35.     Mr. Menkes assisted with the bid for UPS's business during his employment with BCD, and the bid was closed as lost in August 2019. (Cruz Decl. (App. at ECF 70-5, p. 6), ¶ 33; Blough Dep. (App. at ECF 70-2, pp. 26, 28), 101:9-11, 105:10-12; JSOF (ECF 69) ¶ 19).

**Plaintiff's Response: Denied. While BCD claims that Mr. Menkes merely "assisted" with the UPS bid, in reality Mr. Cruz instructed Plaintiff to yield to Mr. Menkes, effectively removing her as lead. Mr. Menkes reported directly to Michael Janssen, not to the sales organization or to Plaintiff, creating a conflict of authority within the bid team. Rather than providing limited consulting support, Mr. Menkes usurped Plaintiff's leadership role-he was inserted over her in strategy development, client-facing communications, and internal decision-making. His intervention derailed the established sales process, confused accountability, and undermined Plaintiff's ability to manage the opportunity. The UPS bid**

4911-9274-4308

**was ultimately lost because Plaintiff's leadership was overridden and the chain of authority fractured.**

*Defendant's Reply*: The entirety of DSOF ¶ 35 was contained in JSOF ¶ 19, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 35. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 35; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 35 is undisputed and should be deemed admitted.

36.     Mr. Menkes knew the UPS travel manager. (Blough Dep. (App. at ECF 70-2, p. 27), 104:12-20; JSOF (ECF 69) ¶ 20).

**Plaintiff's Response: Admitted. Menkes' prior 'relationship' was used as a pretext to justify his insertion; his involvement coincided with the opportunity's loss. Plaintiff's ability to control the outcome was removed when her lead role was taken; therefore the potential for a win and commission was lost.**

*Defendant's Reply*: The entirety of DSOF ¶ 36 was contained in JSOF ¶ 20, thus it is undisputed. Further, Plaintiff admits DSOF ¶ 36. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 36; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 36 is undisputed and should be deemed admitted.

37.     Mr. Menkes's relationship with UPS's travel manager went back some time. (Blough Dep. (App. at ECF 70-2, p. 27), 104:12-20).

4911-9274-4308

**Plaintiff's Response: Admitted.**

38.      Mr. Menkes also assisted with the bid for Becton Dickinson's business during his employment with BCD, and the bid was closed as lost in May 2020. (Cruz Decl. (App. at ECF 70-5, p. 6), ¶ 34; JSOF (ECF 69) ¶ 21).

**Plaintiff's Response: Denied. BCD's assertion that Mr. Menkes merely "assisted" with the Becton Dickinson (BO) bid is inaccurate. Mr. Cruz directed Plaintiff to yield to Mr. Menkes on the BD opportunity, removing her authority as the global sales lead. Like UPS, this created a conflict of authority, because Mr. Menkes reported to Michael Janssen outside the sales chain and did not report to Plaintiff. Instead of providing limited consultative support, Mr. Menkes assumed control of strategy discussions and client communications, bypassing Plaintiff on key decisions. His involvement disrupted the coordinated sales process, delayed responses, and undermined team alignment, leading to a fractured approach and the eventual loss of the BD opportunity. Plaintiff's leadership was displaced and her ability to manage and control the bid was eliminated.**

*Defendant's Reply*: The entirety of DSOF ¶ 38 was contained in JSOF ¶ 21, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 38. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 38; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 38 is undisputed and should be deemed admitted.

4911-9274-4308

39.     Mr. Menkes knew the travel manager at Becton Dickinson. (Blough Dep. (App. at ECF 70-2, p. 25), 100:8-16; JSOF (ECF 69) ¶ 22).

**Plaintiff's Response: Admitted. Menkes' prior 'relationship' was used as a pretext to justify his insertion; his involvement coincided with the opportunity's loss. Plaintiff's ability to control the outcome was removed when her lead role was taken; therefore the potential for a win and commission was lost.**

*Defendant's Reply*: The entirety of DSOF ¶ 39 was contained in JSOF ¶ 22, thus it is undisputed. Further, Plaintiff admits DSOF ¶ 39. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 39; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 39 is undisputed and should be deemed admitted.

40.     Mr. Menkes had a long-standing relationship with the travel manager at Becton Dickinson. (Blough Dep. (App. at ECF 70-2, p. 25), 100:8-16).

**Plaintiff's Response: Admitted.**

41.     During the time he was employed, Mr. Menkes's assigned role with the sales teams was as a senior internal consultant. He was not the assigned salesperson responsible for either the UPS bid or the Becton Dickinson bid; Ms. Blough remained the global sales lead for the opportunity on the UPS and Becton Dickinson bids. Ms. Blough was eligible to earn commissions if BCD was successful in its bids. (Blough Dep. (App. at ECF 70-2, p. 25), 100:17-20; Cruz Dep. (App. at ECF 70-3, pp. 12-13), 56:7-16, 57:10-25; Menkes Dep. (App. at ECF 70-4, p. 8), 21:9-19; JSOF (ECF 69) ¶ 23).

**Plaintiff's Response: Denied. BCD's assertion that Mr. Menk.es merely served as a "senior internal consultant" and that Plaintiff "remained the global sales lead" for UPS and Becton Dickinson (BD) is misleading and contradicted by the record. BCD relied on Mr. Menkes's prior relationship with the clients as a pretext to justify his insertion into both pursuits. In practice, Mr. Cruz instructed Plaintiff to yield to Mr. Menkes, effectively removing her authority as lead. Internal and client communications identify Mr. Menkes as the strategy lead and client-facing representative, with Plaintiff excluded from critical meetings and decision-making. As with the Johnson & Johnson account under Kessie Bratko, this arrangement stripped Plaintiff of control, undermined her credibility, and derailed the coordinated sales process, causing her to lose command of opportunities that were central to her performance and compensation. The record therefore does not support BCD's claim that Plaintiff maintained leadership of the UPS and BD bids.**

*Defendant's Reply*: The entirety of DSOF ¶ 41 was contained in JSOF ¶ 23, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 41. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 41; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 41 is undisputed and should be deemed admitted.

42.    Mr. Menkes was not eligible to earn commissions if BCD was successful in its bids. (Menkes Dep. (App. at ECF 70-4, p. 6), 12:1-2; JSOF (ECF 69) ¶ 24).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Mr. Menkes was not personally eligible to receive commissions. Denied that his lack of commission eligibility**

**negates the impact of his involvement. Although Mr. Menkes was not commission-eligible, his presence deprived Plaintiff of commissions by overriding her lead responsibilities. Acting under Mr. Cruz's instruction, Mr. Menkes became the front-facing strategy lead on both UPS and Becton Dickinson (BD), directing client strategy and communications while Plaintiff was sidelined. As a result, Plaintiff's ability to control outcomes on UPS and BO was removed when her lead role was taken; thus, the potential for wins and corresponding commissions was lost.**

*Defendant's Reply*: The entirety of DSOF ¶ 42 was contained in JSOF ¶ 24, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 42, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 42. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 42; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 42 is undisputed and should be deemed admitted.

43.     Mr. Menkes also assisted other sales leads, including Rossana Martin and Debra Cruz, with their prospecting efforts. (Blough Dep. (App. at ECF 70-2, p. 29), 107:16-22; Menkes Dep. (App. at ECF 70-4, p. 7), 15:1-6; JSOF (ECF 69) ¶ 25).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Mr. Menkes was occasionally assigned to provide support to other sales leaders, including Rossana Martin and Deb Cruz, in connection with their prospecting efforts. Denied that those collaborations were comparable to his involvement on UPS and Becton Dickinson (BD). In Plaintiff's case, Mr. Cruz expressly instructed her to yield to Mr. Menkes, elevating him from a support resource to the front-facing strategy lead with direct client interaction and decision-making**

4911-9274-4308

**authority. Internal and client communications confirm that Mr. Menkes was positioned as the primary contact and driver of strategy, a far greater level of control than he exercised on any other account. Both Ms. Martin and Ms. Cruz are identified on Plaintiff's witness list and are expected to testify regarding the nature and scope of Mr. Menkes's role on their accounts, which was limited to support and not leadership, underscoring the disparate treatment of Plaintiff's assignments.**

*Defendant's Reply*: The entirety of DSOF ¶ 43 was contained in JSOF ¶ 25, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 43, but has not pointed to any specific part of the record that disputes any part of DSOF ¶ 43. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 43; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 43 is undisputed and should be deemed admitted.

44.    For example, Mr. Menkes was assigned to work on the sales teams for the IBM, Credit Suisse, and Capital One opportunities. (Cruz Decl. (App. at ECF 70-5, p. 7), ¶ 38).

**Plaintiff's Response: Admitted in part/ Denied in part. Admitted that Mr. Menkes was assigned to provide limited support on certain other opportunities, including IBM, Credit Suisse, and Capital One. Denied that his role on those pursuits was comparable to his involvement with UPS and Becton Dickinson (BD). In those other accounts, the assigned sales leads maintained authority over the RFP process, led client presentations, and were not directed to yield to Mr. Menkes or present him as the client contact. Mr. Cruz instructed Plaintiff to yield to Mr. Menkes, who was presented internally and externally as the front person and strategic lead for both UPS and BD, directing communications and decisions that**

4911-9274-4308

**normally fell under the sales lead's purview. This deviation from standard protocol removed Plaintiff from control of the RFP process and from her direct client-presentation responsibilities.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 44, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 44. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 44; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 44 is undisputed and should be deemed admitted.

45.    Similarly, Kessie Bratko, Senior Vice President, Global Client Team, was assigned to the sales team for Johnson & Johnson as support for Ms. Blough in November 2019, an account that was assigned to Ms. Blough in May 2019. (Janssen Dep. (App. at ECF 70-1, pp. 11-12), 44:25-45:3; Cruz Dep. (App. at ECF 70-3, pp. 14-15), 58:19-59:4; JSOF (ECF 69) ¶ 26).

**Plaintiff's Response: Denied. On Johnson & Johnson, Bratko's role was not 'support' but a full reassignment of leadership. Emails and IMs show the client and internal teams were told Bratko was leading and controlling strategy. Records confirm Plaintiff was excluded from client meetings, strategy calls, and communications, and was reprimanded by senior leadership when she merely responded to direct client outreach or shared approved marketing materials. Plaintiff's ability to control the outcome was eliminated when her lead role was taken; therefore the potential for a win and corresponding commission was lost.**

*Defendant's Reply*: The entirety of DSOF ¶ 45 was contained in JSOF ¶ 26, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 45. Moreover, the additional narrative included in Plaintiff's Response is improper

29

argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 45; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 45 is undisputed and should be deemed admitted.

46.     Ms. Bratko was also added to the sales team for Eli Lilly around the same time that Ms. Bratko was added to the Johnson & Johnson sales team. (Blough Dep. (App. at ECF 70-2, p. 37), 130:6-9).

**Plaintiff's Response: Denied. BCD's characterization that Ms. Bratko was simply "added to the sales team" for Eli Lilly is misleading and incomplete. Although Plaintiff was the assigned global sales lead, Mr. Cruz instructed her to follow Ms. Bratko's lead on strategy and client engagement, effectively making Ms. Bratko the de facto strategy lead. From the outset, Ms. Bratko stated that the client "wasn't going to change" and largely ignored the opportunity, withholding required content and approvals needed to advance the bid. When deliverables slipped, Ms. Bratko disparaged Plaintiff to senior leadership and blamed her for the delays, despite having failed to provide the materials necessary for submission. The pursuit was mishandled due to internal dysfunction and leadership's decision to elevate Ms. Bratko above Plaintiff, which undermined Plaintiff's authority, eroded team alignment, and caused the bid to fail. Plaintiff's ability to control the outcome was effectively removed through this undermining; thus, the potential for a win and corresponding commission was lost.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 46. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement

of fact in DSOF ¶ 46; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 46 is undisputed and should be deemed admitted.

47.    The bid for Eli Lilly's business was closed as lost in February 2020. (Cruz Decl. (App. at ECF 70-5, p. 7), ¶ 42).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that the Eli Lilly bid closed as lost in February 2020. Denied that the loss resulted from market factors or client choice alone. The bid failed due to internal dysfunction and mismanagement after Mr. Cruz directed Plaintiff to follow Ms. Bratko's lead, elevating her to strategy control despite her own admission that the client "wasn't going to change." Ms. Bratko largely ignored the opportunity, withheld critical content and approvals, and later blamed Plaintiff for delays she caused. These actions deprived Plaintiff of her authority to lead the pursuit and of the opportunity to correct course. As a result, Plaintiff's ability to control the outcome was removed, and the potential win-and corresponding commission-was lost.**

*Defendant's Reply*: Plaintiff admits the full substance of DSOF ¶ 47, and has not pointed to any specific part of the record that disputes any part of DSOF ¶ 47. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 47; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 47 is undisputed and should be deemed admitted.

48.    Ms. Bratko was considered a subject matter expert in the travel needs of large pharmaceutical companies who was leading BCD's largest pharmaceutical accounts when she

31

joined the Johnson & Johnson team. (Janssen Dep. (App. at ECF 70-1, pp. 11-12), 44:7-45:18; JSOF (ECF 69) ¶ 27).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Ms. Bratko was recognized internally for her knowledge of the pharmaceutical industry. Denied that her "subject-matter expertise" justified displacing the assigned sales lead. Ms. Bratko was not a salesperson, had no sales quota or commission accountability, and was already managing existing pharmaceutical clients. Her insertion as the strategy lead on Johnson & Johnson and Eli Lilly violated the established sales hierarchy and removed Plaintiff's authority as the assigned lead. This deviation from BCD's standard sales structure caused confusion internally, undermined Plaintiff's credibility with the client teams, and contributed to the loss of both opportunities and their associated commissions.**

*Defendant's Reply*: The entirety of DSOF ¶ 48 was contained in JSOF ¶ 27, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 48, but has not pointed to any specific part of the record that disputes any part of DSOF ¶ 48. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 48; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 48 is undisputed and should be deemed admitted.

49.     Because of her knowledge and experience, Ms. Bratko was added to the Johnson & Johnson pitch team to be part of the team to present to the prospect and to formulate strategy to help BCD differentiate from other TMCs in the travel industry. (Janssen Dep. (App. at ECF 70-1, p. 12), 45:11-18; JSOF (ECF 69) ¶ 28).

4911-9274-4308

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Ms. Bratko possessed pharmaceutical-industry experience and was added to the Johnson & Johnson pursuit. Denied that her role was limited to supporting strategy development or differentiation. Although initially described as a "pitch-team resource," Mr. Cruz instructed Plaintiff to follow Ms. Bratko's lead, making her the front-facing strategy lead and primary contact with the client. Internal and client communications show Ms. Bratko directing strategy, attending leadership calls in place of Plaintiff, and managing client discussions-activities well beyond the stated purpose of "helping BCD differentiate." This insertion removed Plaintiff from her leadership role, violated the sales hierarchy, and undermined her authority and credibility with both internal and client stakeholders. The resulting dysfunction contributed to the loss of the opportunity and Plaintiff's corresponding commission.**

*Defendant's Reply*: The entirety of DSOF ¶ 49 was contained in JSOF ¶ 29, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 49, but has not pointed to any specific part of the record that disputes any part of DSOF ¶ 49. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 49; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 49 is undisputed and should be deemed admitted.

50.     Ms. Bratko was not the assigned sales lead on the Johnson & Johnson account, and she was already servicing a portion of the Johnson & Johnson account. Due to her pharmaceutical and life sciences expertise generally and experience with Johnson & Johnson, she was added to

33

the sales team for this potential expansion opportunity led by Ms. Blough. (Cruz Dep. (App. at ECF 70-3, pp. 15-16), 59:19-60:14; JSOF (ECF 69) ¶ 29).

**Plaintiff's Response: Denied. Contrary to Defendant's assertion, Ms. Bratko was positioned as the sales lead on the Johnson & Johnson opportunity. Although Plaintiff was the originally assigned global sales lead, Mr. Cruz instructed her to follow Ms. Bratko's lead, effectively reversing the sales hierarchy and transferring authority to Ms. Bratko. Internal and client communications jointly issued by Mr. Cruz and Ms. Bratko identified her as the lead, including messages circulated to global sales teams and client representatives confirming her leadership of the opportunity. Plaintiff was excluded from strategy meetings, client meetings, and account correspondence, confirming that Ms. Bratko-not Plaintiff-functioned as the front-facing strategy lead. This displacement undermined Plaintiff's authority, disrupted the standard sales process, and directly contributed to the loss of the opportunity and her corresponding commissions.**

*Defendant's Reply*: The entirety of DSOF ¶ 50 was contained in JSOF ¶ 29, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 50, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 50. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 50; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 50 is undisputed and should be deemed admitted.

51.     Ms. Blough understood that Ms. Bratko was not eligible for incentive compensation in her role. (Blough Dep. (App. at ECF 70-2, p. 36), 127:19-23; JSOF (ECF 69) ¶ 30).

4911-9274-4308

**Plaintiff's Response: Admitted.**

52.     To try to expand the work BCD did with Johnson & Johnson, Ms. Blough was the global lead and remained the global lead responsible for facilitating the response to the RFP, the deliverables, and the timeline in which BCD submitted answers to Johnson & Johnson's questions. (Cruz Dep. (App. at ECF 70-3, p. 16), 60:21-25; JSOF (ECF 69) ¶ 31).

**Plaintiff's Response: Denied. While BCD may have intended for the process to operate as described, it undermined the sales process by excluding Plaintiff from the very strategic conversations and planning sessions that are essential to responding to an RFP. Plaintiff was not included in internal strategy discussions, client correspondence, or meetings where direction for the Johnson & Johnson pursuit was set. If BCD had truly intended for Plaintiff to serve as the global lead, she would have been involved in the emails, calls, and client engagements necessary to ensure RFP readiness and alignment. Instead, Mr. Cruz and Ms. Bratko conducted those communications without her, presenting Ms. Bratko as the lead and leaving Plaintiff without access to the information or authority needed to manage the opportunity. These actions undermined the standard sales process, excluded the assigned sales lead, and contributed to the lost opportunity and Plaintiff's corresponding commission.**

***Defendant's Reply***: The entirety of DSOF ¶ 52 was contained in JSOF ¶ 31, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 52. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 52; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 52 is undisputed and should be deemed admitted.

4911-9274-4308

53.    Throughout her employment as Vice President, Global Sales beginning in July 2018, Ms. Blough and Mr. Cruz had numerous conversations regarding Ms. Blough's pipeline. (Cruz Dep. (App. at ECF 70-3, pp. 11, 18), 52:7-14, 62:16-23; Blough Dep. (App. at ECF 70-2, p. 22), 78:12-13; Cruz Decl. (App. at ECF 70-5, p. 8), ¶ 45).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Plaintiff made repeated efforts to have constructive discussions with Mr. Cruz about her pipeline. Denied that those discussions were substantive or productive. The only consistent exchanges occurred during brief status- update "huddle" calls, many of which were canceled or rescheduled by Mr. Cruz. When Plaintiff attempted to raise concerns regarding the lack of viable opportunities and imbalance in her pipeline, Mr. Cruz dismissed or deferred the conversations, promising to "discuss later" but failing to follow through. As a result, no meaningful or corrective discussions occurred, and Plaintiff's documented concerns about her inadequate pipeline remained unresolved throughout her tenure as Vice President, Global Sales.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 53, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 53. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 53; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 53 is undisputed and should be deemed admitted.

54.    In these conversations, Mr. Cruz explained to Ms. Blough how accounts and new opportunities are assigned and that there are many factors taken into consideration when assigning

36

4911-9274-4308

accounts, including where the opportunity arose, what vice president would be geographically close to the client, industry experience, and existing relationships, among other things. (Cruz Dep. (App. at ECF 70-3, pp. 11, 18), 52:7-14, 62:16-23; Cruz Decl. (App. at ECF 70-5, p. 8), ¶ 46).

**Plaintiff's Response: Denied. Mr. Cruz did not provide any such explanation of how accounts or new opportunities were assigned. When Plaintiff attempted to discuss the inequitable distribution of accounts and the lack of viable opportunities in her pipeline, Mr. Cruz repeatedly diverted the conversation, stating that he would "speak with Mike Janssen" and "right-set the pipeline," but he never did so and never followed up. No detailed discussion or clarification of assignment criteria, such as geography, experience, or client relationships, ever occurred. Plaintiff's efforts to obtain transparency and correction were consistently dismissed, leaving her pipeline unchanged and her concerns unresolved.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 54. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 54; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 54 is undisputed and should be deemed admitted.

55.    Ms. Blough, like most salespeople who earn commissions, wanted more prospects in her pipeline. (Cruz Dep. (App. at ECF 70-3, pp. 11, 18), 52:7-14, 62:16-23; Cruz Decl. (App. at ECF 70-5, p. 8), ¶ 50; JSOF (ECF 69) ¶ 32).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that, like any commissioned salesperson, Plaintiff wanted a robust and balanced pipeline. Denied that her desire for more prospects reflected a routine request or dissatisfaction common among sales**

37

**staff. Plaintiff's pipeline was materially inadequate compared to her peers and consisted largely of dormant, non- viable, or low-value accounts, a fact she repeatedly raised with Mr. Cruz and HR. Her efforts to address the imbalance were dismissed or deferred by leadership, leaving her without meaningful opportunities to generate commissions while similarly situated peers, including male VPs and Mr. Cruz's spouse, received active, revenue- generating assignments.**

*Defendant's Reply*: The entirety of DSOF ¶ 55 was contained in JSOF ¶ 32, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 55, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 55. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 55; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 55 is undisputed and should be deemed admitted.

56.    In late 2019, Ms. Blough's pipeline was appropriate given her experience, skillset, geography, and industry sector. (Cruz Dep. (App. at ECF 70-3, pp. 18-19), 62:24-63:3; JSOF (ECF 69) ¶ 33).

**Plaintiff's Response: Denied. Plaintiff's pipeline in late 2019 was not appropriate given her role, experience, and performance history. The accounts assigned to her were disproportionately low- value, dormant, or inactive, and did not reflect her skillset or revenue potential compared to similarly situated peers. Plaintiff repeatedly raised concerns to Mr. Cruz that her pipeline lacked viable opportunities and was not aligned with her geography or expertise. Rather than address these concerns, Mr. Cruz acknowledged the imbalance and stated he would "right-set the pipeline" after speaking with Mike Janssen,**

4911-9274-4308

**but he never followed through. The record, including Plaintiff's email correspondence to Mr. Cruz, shows continued complaints about inadequate account assignments, not an "appropriate" pipeline as Defendant suggests.**

*Defendant's Reply*: The entirety of DSOF ¶ 56 was contained in JSOF ¶ 33, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 56, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 56. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 56; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 56 is undisputed and should be deemed admitted.


57.    Indeed, throughout her employment, Ms. Blough's pipeline was appropriate given her experience, skillset, geography, and industry sector. (Cruz Decl. (App. at ECF 70-5, p. 8), ¶ 51).

**Plaintiff's Response: Denied. At no point during Plaintiff's tenure as Vice President, Global Sales was her pipeline "appropriate" for her experience, skillset, or geography. The accounts assigned to Plaintiff were disproportionately low-value, dormant, or inactive, and did not align with her record of performance or expertise. Plaintiff repeatedly raised these deficiencies to Jorge Cruz, who acknowledged the imbalance and stated he would "right-set the pipeline" after consulting with Mike Janssen, but he never did so and no corrective action was taken. Despite Plaintiff's continued requests for equitable account distribution, her portfolio remained stagnant while male peers and Deb Cruz-Mr. Cruz's spouse-received active, revenue-generating opportunities. Plaintiff's contemporaneous emails to HR and her discovery responses confirm ongoing complaints about her inadequate and non-competitive**

4911-9274-4308

**pipeline, directly contradicting Defendant's claim that it was "appropriate" throughout her employment.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 57. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 57; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 57 is undisputed and should be deemed admitted.

58.    In approximately March 2021, Debra Cruz, another Vice President of Global Sales was transferred from the global sales team to the media and entertainment team. (Cruz Decl. (App. at ECF 70-5, p. 7), ¶ 43; JSOF (ECF 69) ¶ 34).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that in approximately March 2021, Deb Cruz was reassigned from the Global Sales team to a newly created position within Media & Entertainment. Denied that this was a standard transfer or that it removed her from the sales organization. The position was not posted or competitively filled-it was created and awarded directly to Deb Cruz, and Jorge Cruz participated in that decision, along with Michael Janssen, Mike Walley, and Michelle Lawley, as confirmed in Michael Janssen's deposition (Dep. Janssen 50:1-25).**

*Defendant's Reply*: The entirety of DSOF ¶ 58 was contained in JSOF ¶ 56, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 58, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 58. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations – the page in the deposition of Michael Janssen Plaintiff cites is not part of the record -- and is not responsive

to the statement of fact in DSOF ¶ 58; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 58 is undisputed and should be deemed admitted.

59.     Ms. Cruz's transfer to the media and entertainment team left several accounts unassigned, and these accounts were not immediately assigned to any other employee, as these bids were either not active or were needed to preserve a pipeline of work for any new sales employees hired. (Cruz Decl. (App. at ECF 70-5, p. 7), ¶ 44; JSOF (ECF 69) ¶ 35).

**Plaintiff's Response: Denied. BCD's statement that Ms. Cruz's transfer "left several accounts unassigned" is misleading and inaccurate. While Mr. Cruz initially stated that he was unsure whether he would replace Deb Cruz on the Global Sales team, sales leads across the organization were instructed to transfer all of their media and entertainment accounts to Ms. Cruz following the announcement of her new role. In addition, Ms. Cruz was permitted to hand-pick which non- media accounts she would retain, contrary to BCD's claim that the accounts were unassigned or inactive.**

*Defendant's Reply*: The entirety of DSOF ¶ 59 was contained in JSOF ¶ 35, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 59. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 59; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 59 is undisputed and should be deemed admitted.

60.     Ms. Cruz and Mr. Cruz are married to each other. (Cruz Decl. (App. at ECF 70-5, p. 8), ¶ 52; JSOF (ECF 69) ¶ 36).

4911-9274-4308

**Plaintiff's Response: Admitted.**

61.     Ms. Cruz has never reported directly to Mr. Cruz. (Cruz Decl. (App. at ECF 70-5, p. 8), ¶ 53; Cruz Dep. (App. at ECF 70-3, pp. 8), 35:15-25).

**Plaintiff's Response:[5] Denied. Although BCD claims that Deb Cruz "never reported directly" to Jorge Cruz, the record demonstrates that Mr. Cruz exercised direct supervisory and strategic authority over her accounts throughout her tenure. While Ms. Cruz may have had only a "dotted-line" reporting relationship on paper in organizational charts for 2018 and was later removed from the structure in 2020, BCD's own documents show that Jorge Cruz remained the decision-maker on Ms. Cruz's portfolio and was actively engaged in her client strategy, account management, and presentations.**

**Numerous records produced by BCD confirm that Ms. Cruz reported to Jorge Cruz functionally through regular strategy sessions, presentation participation, and account planning on major clients, including:**

**Denied. Although BCD claims Deb Cruz never reported directly to Jorge Cruz, he reviewed/approved her accounts and intervened in assignments and compensation; the marital relationship created an ongoing conflict that affected distribution of opportunities.**

***Defendant's Reply***: In both responses to DSOF ¶ 61, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 61. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations,

---

[5] Plaintiff includes two separately numbered responses to DSOF ¶ 61, including one response that appears to be incomplete.

4911-9274-4308

and is not responsive to the statement of fact in DSOF ¶ 61; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 61 is undisputed and should be deemed admitted.

62.    Mr. O'Brien was a Vice President of Global Sales in the United Kingdom. After his termination in approximately March 2021, many of his accounts were reassigned to other global sales leaders who were in close proximity to the decisionmakers of the clients or prospects. (Cruz Decl. (App. at ECF 70-5, pp. 8-10), ¶¶ 54-55).

**Plaintiff's Response: Denied. BCD's assertion that Mr. O'Brien's accounts were reassigned based on proximity to the decisionmakers is false and contradicted by BCD's own records. As previously listed in Defendant's Summary Judgment filing, the Vice Presidents in Global Sales were located around the world-Susan Altman in Chicago, Deb Cruz in California, Vanessa Moore in Australia, Mark O'Brien in the United Kingdom, and Sachin Sekhri in New Jersey. Geography therefore could not have been a consistent or legitimate determining factor in account assignments.**

**The record shows that following Mr. O'Brien's termination in approximately March 2021, high-value global accounts were not distributed based on proximity, but rather reassigned to individuals favored by Jorge Cruz, including his spouse, Deb Cruz, and male peers such as Sachin Sekhri, Ton Maanicus, and Nick Dewey. Notably, Ton Maanicus and Nick Dewey were Regional Directors, positions below Plaintiff's Vice President title, yet they received multiple global accounts that were withheld from Plaintiff. Plaintiff, who was based in the United States and comparably situated, received none of these opportunities. This pattern demonstrates that BCD's purported reliance on "geographic proximity" was a pretextual justification for preferential treatment and is not supported by the evidence.**

43

***Defendant's Reply***: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 62. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 62; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 62 is undisputed and should be deemed admitted.

63.     After the end of Mr. O'Brien's employment in approximately March 2021, many of his accounts were reassigned to other global sales leaders who were in close proximity to the decisionmakers of the clients or prospects or otherwise had relevant experience or some other factor that would be beneficial for handling those accounts. With respect to the accounts that Ms. Blough alleges were Mr. O'Brien's and were assigned to other sales employes but should have been assigned to her following Mr. O'Brien's departure, the following is list of how those account assignments were handled:

a.  GlaxoSmithKline was never assigned to Mr. O'Brien, and it was not transferred following Mr. O'Brien's separation from BCD prior to Ms. Blough's resignation.

b.  Novartis was assigned to Mr. Sekhri on April 22, 2021 because of Mr. Sekhri's experience in the life sciences sector (and was later reassigned to a different male Vice President of Global Sales whose experience indicated to BCD that he would provide the best opportunity to win the business after Ms. Blough's resignation).

c.  Mars was assigned to Vanessa Moore, Vice President, Global Sales from Mr. O'Brien on March 2, 2020, and from Ms. Moore to Mr. Sekhri on January 21, 2021. It was not transferred between Mr. O'Brien's separation from BCD and Ms. Blough's resignation.

4911-9274-4308

d.  GE was not assigned to Mr. O'Brien at the time of his separation. Mr. O'Brien transferred the GE prospective account to Debra Cruz on November 6, 2020.

e.  Bank of America was never assigned to Mr. O'Brien. It had been assigned between Ms. Cruz and Susan Altman, with Ms. Cruz being assigned as the sales lead start in 2019. On August 12, 2021, Bank of America was assigned from Ms. Cruz to Jorge Cruz as a result of Ms. Cruz's portfolio shifting after she moved into the Media & Entertainment role after Mr. Cruz discussed it with Bank of America.

f.  Airbus was transferred from Mr. O'Brien to Ton Maanicus on October 25, 2019, who was based in Belgium, as Mr. Maanicus speaks French and was in region, as the Airbus decision makers are based in France. This transfer took place before Mr. O'Brien's separation.

g.  Royal Dutch Shell was transferred to Mr. Maanicus on April 13, 2021, again due to proximity to decision makers and skillset.

h.  Phillip Morris was not assigned to Mr. O'Brien or Mr. Maanicus during Ms. Blough's employment as Vice President.

i.  British American Tobacco was transferred to Tony McGetrick, Vice President of UK and Ireland Sales, on May 17, 2021, due to his proximity to decisionmakers, as British American Tobacco is a company based out of the United Kingdom.

j.  Unilever was transferred from Mr. O'Brien to Nick Dewey on April 13, 2021, as it was a global opportunity being led of the United Kingdom where Nick Dewey, was based.

k.  Barclays has been assigned to a United Kingdom-based BCD salesperson since prior to 2017, as Barclays is headquartered out of the UK. There were no

4911-9274-4308

opportunity ownership changes for Barclays during Ms. Blough's employment as a Vice President, and it was not reassigned after Mr. O'Brien's separation.

l. BASF has a Germany-based headquarters, so it has always had a German or European-based BCD salesperson assigned. There were no opportunity ownership changes for BASF during Ms. Blough's employment as a Vice President, and it was not reassigned after Mr. O'Brien's separation.

(Cruz Decl. (App. at ECF 70-5, pp. 9-10), ¶ 55).

**Plaintiff's Response: Denied. While there were some inconsistencies within BCD's Salesforce records, the fact remains that Plaintiff did not receive any of the open accounts following Mr. O'Brien's departure. BCD's claim that the accounts were reassigned based on geographic proximity or specialized experience is unsupported by documentation and contradicted by its own global sales structure. Mr. O'Brien's position was eliminated due to redundancy, and therefore there was no justification for holding back accounts under the pretense of preserving pipeline for a replacement Global Sales Lead-none was hired.**

**The record demonstrates that Jorge Cruz deliberately withheld assignments to retain control over the pipeline and restrict Plaintiff's access to viable opportunities. His repeated deferrals and non-responsiveness to Plaintiff's requests for equitable distribution suggest an effort to limit her portfolio while awaiting what he perceived as a "better option" for placement of key accounts-or to observe whether the constructive discharge he was orchestrating would force Plaintiff to resign. During this period, high-value opportunities previously linked to Mr. O'Brien were instead diverted to favored employees, including Deb Cruz (his spouse) and male counterparts, such as Sachin Sekhri, Ton Maanicus, and Nick Dewey-the latter two being Regional Directors below Plaintiff's title. Plaintiff, who was**

46

**comparably qualified and positioned within the United States, received none of those accounts.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 63. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 63; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 63 is undisputed and should be deemed admitted.

64.    Ms. Blough admitted that she had no prior relationship with any of Mr. O'Brien's accounts that were assigned to other sales employees. (Blough Dep. (App. at ECF 70-2, p. 24), 82:16-18).

**Plaintiff's Response: Admitted that Plaintiff had no prior relationship with certain O'Brien accounts; denied that this justified excluding her; recipients also lacked prior ties yet received those accounts.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 64, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 64. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 64; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 64 is undisputed and should be deemed admitted.

65.    Ms. Blough was assigned to the Schlumberger account on May 27, 2021, following Mr. O'Brien's separation from BCD. This account has previously been assigned to Mr. O'Brien. (Cruz Decl. (App. at ECF 70-5, p. 11), ¶ 57).

**Plaintiff's Response: Denied. Assignment to Schlumberger after O'Brien's departure produced no new revenue opportunity and merely created the appearance of balance as Plaintiff was listed as the North America support for this account.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 65. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 65; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 65 is undisputed and should be deemed admitted.

66.     Not all of Mr. O'Brien's prospective accounts were reassigned following his termination, as BCD kept a pipeline intact for future employees. (Cruz Decl. (App. at ECF 70-5, p. 11), ¶ 58).

**Plaintiff's Response: Denied. BCD's assertion that a portion of Mr. O'Brien's accounts was "kept intact for future employees" is false and contradicted by the record. Mr. O'Brien's position was eliminated due to redundancy, and BCD did not hire or identify any replacement for his role within Global Sales. Therefore, there was no legitimate reason to withhold accounts under the guise of preserving pipeline for a future hire. In practice, the decision to keep those accounts "unassigned" served only to allow Jorge Cruz to control the redistribution of opportunities and to continue withholding viable prospects from Plaintiff.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 66. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement

of fact in DSOF ¶ 66; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 66 is undisputed and should be deemed admitted.

### III.   PLAINTIFF'S COMMISSION PLANS

67.     Under the terms of the Sales Incentive Plans (SIPs) that provided Ms. Blough with the ability to receive commissions in 2020 and 2021, "During the first six months of ticketing, commissions will not be paid until there is a fully executed customer contract." (2020 SIP, ECF 15-1, p. 11, Section C; 2021 SIP, ECF 15-1, p. 24 Section C; JSOF (ECF 69) ¶ 37).

**Plaintiff's Response: None.**[6]

*Defendant's Reply*: The entirety of DSOF ¶ 67 was contained in JSOF ¶ 37, thus it is undisputed. Further, Plaintiff failed to provide a response to DSOF ¶ 67; accordingly, DSOF ¶ 67 is undisputed and should be deemed admitted.

68.     Under the terms of the SIPs that provided Ms. Blough with the ability to receive commissions in 2020 and 2021, a salesperson "must be an employee of BCD Travel on the date that commissions are paid to be eligible to receive that commission. All unpaid sales commissions, bonuses and incentives are forfeited upon termination of employment for any reason." (2020 SIP, ECF 15-1, p. 14, Section P; 2021 SIP, ECF 15-1, p. 27 Section N; JSOF (ECF 69) ¶ 38).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that the Sales Incentive Plans (SIPs) included a provision stating that commissions would not be paid until a fully executed customer contract was in place during the first six months of ticketing. Denied to the extent Defendant implies that this provision barred payment of Plaintiff's**

---

[6] Plaintiff did not provide a response to DSOF ¶ 67.

**commissions. The Halliburton contract was fully executed, satisfying the condition precedent for payment, yet Plaintiff's earned commissions were withheld in violation of the plan terms. Accordingly, the cited provision is immaterial to Plaintiff's claim for unpaid commissions.**

*Defendant's Reply*: The entirety of DSOF ¶ 68 was contained in JSOF ¶ 38, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 68, but has not pointed to any specific part of the record that disputes any part of DSOF ¶ 68. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 68; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 68 is undisputed and should be deemed admitted.

69.     Under the terms of the SIPs that provided Ms. Blough with the ability to receive commissions in 2020 and 2021, the SIPs could be "amended, modified, or terminated at any time by BCD Travel without prior notice." (2020 SIP, ECF 15-1, p. 15, Section Q; 2021 SIP, ECF 15-1, p. 27 Section O; JSOF (ECF 69) ¶ 39).

**Plaintiff's Response: Admitted.**

## IV.    BCD'S COMPANY-WIDE SUSPENSION OF SALES COMMISSION EARNINGS

70.     During the COVID-19 pandemic, travel was restricted areas across the globe and as a result, BCD's income precipitously declined, as BCD generates much of its revenue based on travel transactions completed by its clients. (Cruz Decl. (App. at ECF 70-5, p. 11), ¶ 59).

**Plaintiff's Response: Admitted.**

50

4911-9274-4308

71.     Since its global salespeople's commissions are largely based upon the travel transactions its clients make during the first 15 months of an engagement, with the severe drop-off in corporate travel, BCD's salespeople would not be earning much, if any commissions on corporate travel. (Blough Dep. (App. at ECF 70-2, pp. 42-43, 67-70), 140:15-141:7, Exhibits 15-16; Cruz Decl. (App. at ECF 70-5, p. 11), ¶ 60; JSOF (ECF 69) ¶ 40).

**Plaintiff's Response: Admitted.**

72.     As a result, both due to in the lost income to the company and the loss of commissions for its salespeople, BCD made the decision to suspend the commission earning window for Q2 through Q4 of 2020. (Blough Dep. (App. at ECF 70-2, pp. 42-43, 67-70), 140:15-141:7, Exhibits 15-16; Cruz Decl. (App. at ECF 70-5, p. 11), ¶¶ 60-61; JSOF (ECF 69) ¶ 40).

**Plaintiff's Response: Denied. The claimed 'deferral to benefit employees' lacked any guarantee of later payment to those constructively discharged; for Plaintiff, it erased earned income.**

*Defendant's Reply*: The entirety of DSOF ¶ 72 was contained in JSOF ¶ 40, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 72. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 72; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 72 is undisputed and should be deemed admitted.

73.     This essentially shifted the period of time in which commissions could be earned to the end of the otherwise applicable period, so that employees would be able to earn more

51

4911-9274-4308

commissions as travel resumed. (Blough Dep. (App. at ECF 70-2, pp. 42-43, 67-70), 140:15-141:7, Exhibits 15-16; Cruz Decl. (App. at ECF 70-5, p. 11), ¶¶ 61-62; JSOF (ECF 69) ¶ 40).

**Plaintiff's Response: Denied. The shifted earning window advantaged only active employees; Plaintiff's constructive discharge rendered her ineligible for reinstatement of commissions that should have been paid.**

*Defendant's Reply*: The entirety of DSOF ¶ 73 was contained in JSOF ¶ 40, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 73. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 73; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 73 is undisputed and should be deemed admitted.

74.    This deferred earnings window allowed sales team members to benefit from returning transactions at a later date. (Blough Dep. (App. at ECF 70-2, pp. 42-43, 67-70), 140:15-141:7, Exhibits 15-16; Cruz Decl. (App. at ECF 70-5, p. 11), ¶ 62; JSOF (ECF 69) ¶ 41).

**Plaintiff's Response: Denied. No accounting or adjustment was made for those separated during the freeze; Plaintiff's earnings remained withheld.**

*Defendant's Reply*: The entirety of DSOF ¶ 74 was contained in JSOF ¶ 41, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 74. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 74; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 74 is undisputed and should be deemed admitted.

75.    The deferral of commissions for these quarters was applied to all individual contributors who earned commissions at BCD; it was not restricted to Ms. Blough. (Cruz Decl. (App. at ECF 70-5, p. 11), ¶ 63; Blough Dep. (App. at ECF 70-2, pp. 67-70), Exhibits 15-16; JSOF (ECF 69) ¶ 42).

**Plaintiff's Response: Denied. Plaintiff did not agree to permanent forfeiture of commissions; she acknowledged notices but did not waive entitlement to earned compensation and pursued payment through counsel.**

*Defendant's Reply*: The entirety of DSOF ¶ 75 was contained in JSOF ¶ 42, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 75. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 75; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 75 is undisputed and should be deemed admitted.

76.    Ms. Blough agreed to the deferment of commissions under this program. (Cruz Decl. (App. at ECF 70-5, p. 11), ¶ 64; Blough Dep. (App. at ECF 70-2, pp. 43, 69-70), 176:1-4, Exhibit 16; JSOF (ECF 69) ¶ 43).

**Plaintiff's Response: Denied. The freeze remained through her separation and was lifted later; others received reinstated payments including amounts accrued during the freeze; Plaintiff did not.**

*Defendant's Reply*: The entirety of DSOF ¶ 76 was contained in JSOF ¶ 43, thus it is undisputed. Further, Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 76. Moreover, the additional narrative included in Plaintiff's Response is improper

4911-9274-4308

argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 76; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 76 is undisputed and should be deemed admitted.

77.    The suspension of the earning of commissions remained in effect though the time when Ms. Blough resigned and left BCD. (Blough Dep. (App. at ECF 70-2, p. 43), 141:9-11; JSOF (ECF 69) ¶ 44).

**Plaintiff's Response: Admitted that the freeze remained through resignation; denied that withholding post-freeze payment of earned commissions was lawful.**

*Defendant's Reply*: The entirety of DSOF ¶ 77 was contained in JSOF ¶ 44, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 77, but has not pointed to any specific part of the record that disputes any part of DSOF ¶ 77. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 77; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 77 is undisputed and should be deemed admitted.

78.    Ms. Blough expected to start receiving commissions on the sale of Halliburton in May of 2020, but the deferral program went into effect in March of 2020 and was not lifted prior to her resignation from BCD. (Blough Dep. (App. at ECF 70-2, pp. 39-43), 137:13-141:11).

**Plaintiff's Response: Admitted.**

79.      The signing of the contract for the Boston Scientific was not executed during Ms. Blough's employment, as it was executed on April 25, 2022. (Cruz Decl. (App. at ECF 70-5, p. 12), ¶ 68).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that the Boston Scientific contract was executed on April 25, 2022, after Plaintiff's resignation. Denied to the extent Defendant implies that Plaintiff was not entitled to the related commission. Plaintiff was the assigned sales lead, directed and managed the pursuit, and completed the work necessary to secure the client's commitment prior to her constructive discharge. Because BCD's conduct forced her resignation, Plaintiff was compelled to walk away from earnings she had already generated through her leadership of the opportunity. Under the circumstances of constructive discharge, Plaintiff should have been compensated for commissions earned prior to her forced departure, and BCD's failure to do so constitutes improper withholding of earned wages.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 79, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 79. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 79; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 79 is undisputed and should be deemed admitted.

## V.      PLAINTIFF'S COMPLAINT DURING HER EMPLOYMENT

80.      In February 2019, Ms. Blough approached a colleague, Kathy Jackson, former Executive Vice President, Global Program Management, at a BCD event and expressed some

4911-9274-4308

concerns about the way she was being treated in her role. (Blough Dep. (App. at ECF 70-2, pp. 30-31), 109:15-25, 110:4-9).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that in February 2019, during a leadership event, Plaintiff spoke with Kathy Jackson, then Executive Vice President, Global Program Management, and raised concerns about her treatment in the Vice President, Global Sales role. Denied that the conversation was limited to general "work concerns." In that discussion, Plaintiff specifically expressed concerns regarding unequal treatment, inequitable account distribution, and the stress and anxiety caused by management's actions. Ms. Jackson acknowledged the seriousness of the issue and cautioned Plaintiff that "you don't cross the Cruzes," referring to Jorge and Deb Cruz, signaling that raising further concerns could jeopardize Plaintiff's position. This exchange reflects both the culture of favoritism within BCD and the implicit warning that discouraged Plaintiff from pursuing a formal complaint at that time.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 80, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 80. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 80; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 80 is undisputed and should be deemed admitted.

81.     Specifically, Ms. Blough told Ms. Jackson that she felt that she was not being respected in the Vice President, Global Sales role and that she had addressed concerns about the sufficiency of her pipeline with Mr. Cruz multiple times, but Mr. Cruz was not responsive or receptive to those concerns. (Blough Dep. (App. at ECF 70-2, p. 31), 110:4-9).

4911-9274-4308

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Plaintiff spoke with Kathy Jackson about her concerns regarding Mr. Cruz's lack of responsiveness to her repeated efforts to address deficiencies in her pipeline. Denied that Plaintiff stated she was "not being respected in the Vice President, Global Sales role." Plaintiff expressed that she was not being taken seriously, that her concerns were being dismissed, and that leadership was not listening or taking corrective action. She also described feeling uncomfortable with the dynamics between herself and her counterpart, Deb Cruz, given Deb's relationship to Mr. Cruz and the clear imbalance in how opportunities and support were distributed. Things did not seem fair, and Plaintiff noted that even obtaining internal resources or cross-functional assistance was difficult when those same resources were needed by Deb Cruz, who was consistently prioritized. The substance of the conversation centered on Plaintiff's frustration that her professional input and efforts were disregarded and that she was being marginalized within the sales organization.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 81, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 81. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 81; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 81 is undisputed and should be deemed admitted.

82.     On or around Feb 28, 2019, during that same conference, Ms. Jackson informed Yvette Bryant, Senior Vice President, Human Resources, that Ms. Blough had some work concerns but was reluctant to bring them forward. (Declaration of Yvette Bryant ("Bryant Decl.,") (App. at ECF 70-7, p. 2), ¶ 4).

4911-9274-4308

**Plaintiff's Response: Cannot confirm nor deny. Plaintiff cannot confirm or deny this statement, as it is based solely on Yvette Bryant's declaration, which was not made under oath or contemporaneously with the events described, and instead reflects BCD's internal narrative prepared for litigation. Plaintiff has no independent knowledge of what Ms. Jackson may have communicated to Ms. Bryant, and no supporting documentation or contemporaneous record has been produced. To the extent this statement relies on Ms. Bryant's unsworn declaration, it should be afforded little evidentiary weight.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 82. Moreover, the Declaration of Yvette Bryant is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 82 is undisputed and should be deemed admitted.

83.     Ms. Bryant told Ms. Jackson that it would be best for Ms. Blough to reach to her directly to discuss, but also offered that if Ms. Blough preferred, Ms. Bryant could initiate the call because Ms. Bryant did not want to leave her concerns unaddressed. (Bryant Decl. (App. at ECF 70-7, p. 2), ¶ 5).

**Plaintiff's Response: Cannot confirm nor deny. Plaintiff cannot confirm or deny this statement, as it is derived solely from Yvette Bryant's declaration, which was not sworn under oath or contemporaneous with the events described and reflects BCD's litigation-driven narrative rather than an objective record. Plaintiff has no independent knowledge of what Ms. Bryant may have communicated to Ms. Jackson, and Defendant has produced no contemporaneous emails, notes, or documentation to substantiate this claim. Accordingly,**

**any assertion based on Ms. Bryant's unsworn declaration should be afforded little evidentiary weight.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 83. Moreover, the Declaration of Yvette Bryant is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 83 is undisputed and should be deemed admitted.

84.    On March 5, 2019, since Ms. Bryant had not heard from Ms. Blough, Ms. Bryant sent her an email asking if Ms. Blough would like to connect about her concerns. (Bryant Decl. (App. at ECF 70-7, pp. 3, 5-8), ¶ 6, Exhibit 1).

**Plaintiff's Response: Cannot confirm nor deny. Plaintiff cannot confirm or deny this statement, as it is based solely on Yvette Bryant's declaration, which was not sworn under oath or made contemporaneously with the events described and reflects BCD's internal narrative prepared for litigation. Plaintiff has no recollection of receiving such an email, and Defendant has not produced a contemporaneous, authenticated copy to substantiate that the communication occurred.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 84. Moreover, the Declaration of Yvette Bryant is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 84 is undisputed and should be deemed admitted.

4911-9274-4308

85.     Following this, Ms. Bryant had a telephone conversation with Ms. Blough in which Ms. Blough stated her concerns about her level of support and opportunities in the sales team and interactions with her supervisor, Mr. Cruz. During the conversation, Ms. Blough said she was hesitant to raise the issue to Human Resources and get Human Resources involved because she feared it would make things awkward or escalate unnecessarily. (Bryant Decl. (App. at ECF 70-7, p. 3), ¶ 7).

**Plaintiff's Response: Denied. Plaintiff's recollection of the conversation with Yvette Bryant differs from Defendant's account. Ms. Bryant's description is based on an unsworn declaration prepared for litigation and should be afforded little evidentiary weight. Plaintiff recalls that during their discussion, she felt pressured to make statements favorable to BCD and was uncomfortable with the conversation. Aware of another discrimination case involving a co-worker and Kathy Jackson's prior warning that "you don't cross the Cruzes," Plaintiff feared that escalating her concerns would jeopardize her job or worsen the environment. Ms. Bryant gave Plaintiff a "choice" --either Plaintiff could speak to Jorge Cruz directly, or Ms. Bryant would do so on her behalf. This "choice" made clear that BCD's preference was to keep the matter internal and informal, and it effectively ended HR's involvement, leaving Plaintiff without any neutral support or meaningful avenue for resolution.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 85. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 85; therefore, no further response to the narrative is required. Further, the Declaration of Yvette Bryant is not an "unsworn declaration" and is properly before the Court as

record evidence for purposes of Defendant's Motion for Summary Judgment Accordingly, DSOF ¶ 85 is undisputed and should be deemed admitted.

86.     On this call, Ms. Blough stated her preference was first to speak with Mr. Cruz and address her concerns directly with him. Ms. Blough and Ms. Bryant agreed that she would do so, but would keep Ms. Bryant updated on how things went. (Bryant Decl. (App. at ECF 70-7, p. 3), ¶ 8; Blough Dep. (App. at ECF 70-2, pp. 32-33), 113:2-114:3).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Plaintiff recalls stating she would speak directly with Jorge Cruz regarding her concerns. Denied that this conversation occurred in the manner or context described by Defendant. Ms. Bryant's version of events is based on an unsworn declaration prepared for litigation and should be afforded little evidentiary weight. Plaintiff recalls being given a "choice" by Ms. Bryant, either she could raise the issue with Mr. Cruz herself or Ms. Bryant would do so on her behalf. Plaintiff chose to speak with Mr. Cruz directly, hoping for resolution, but this was done under pressure and discomfort, as Ms. Bryant's response made clear that formal HR involvement was not encouraged.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 86, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 86. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 86; therefore, no further response to the narrative is required. Further, the Declaration of Yvette Bryant is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 86 is undisputed and should be deemed admitted.

87.     Ms. Blough did not raise any claims about a hostile work environment or sex discrimination in her conversation with Ms. Bryant. (Bryant Decl. (App. at ECF 70-7, pp. 3, 5-8), ¶ 9, Exhibit 1).

**Plaintiff's Response: Denied. Ms. Bryant's statement is based on an unsworn declaration prepared for litigation and should be afforded little evidentiary weight. Plaintiff disputes Defendant's characterization of her conversation with Ms. Bryant. During that discussion, Plaintiff described being excluded from opportunities, ignored by leadership, and publicly embarrassed in front of senior executives--conduct that constitutes hostile treatment even if the term "hostile work environment" was not expressly used. These events occurred prior to the Johnson & Johnson, Becton Dickinson, and UPS incidents that Mr. Cruz later orchestrated, establishing that Plaintiff's concerns about unfair and retaliatory behavior began well before those accounts were reassigned. Plaintiff's complaint to Ms. Bryant included favoritism, exclusion from key accounts, and inequitable treatment, but Defendant's summary omits these central points.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 87. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 87; therefore, no further response to the narrative is required. Further, the Declaration of Yvette Bryant is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment Accordingly, DSOF ¶ 87 is undisputed and should be deemed admitted.

62

4911-9274-4308

88.     On March 14, 2019, having received no follow-up from Ms. Blough after their phone conversation, Ms. Bryant sent her an email requesting an update and also asking her if she had changed her mind and wanted Human Resources to get involved more directly. (Bryant Decl. (App. at ECF 70-7, pp. 3, 5-8), ¶ 10, Exhibit 1; Blough Dep. (App. at ECF 70-2, p. 34), 116:17-25, Exhibit 7).

**Plaintiff's Response: Cannot confirm nor deny. Plaintiff does not specifically recall this communication.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 88. Accordingly, DSOF ¶ 88 is undisputed and should be deemed admitted.

89.     On the same day, Ms. Blough replied that the prior week's call with Mr. Cruz had been canceled and the current week's call had also been canceled due to a death in Mr. Cruz's family, so she had not yet had an opportunity to discuss with Mr. Cruz, but she still planned to do so. (Bryant Decl. (App. at ECF 70-7, pp. 3, 5-8), ¶ 11, Exhibit 1).

**Plaintiff's Response: Cannot confirm nor deny. Plaintiff does not specifically recall this communication.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 89. Accordingly, DSOF ¶ 89 is undisputed and should be deemed admitted.

90.     On April 10, 2019, Ms. Bryant sent Ms. Blough another follow up email, asking Ms. Blough again for an update or if she needed assistance addressing the concerns with Mr. Cruz. (Bryant Decl. (App. at ECF 70-7, pp. 4-8), ¶ 12, Exhibit 1).

4911-9274-4308

**Plaintiff's Response: Cannot confirm nor deny. Plaintiff does not specifically recall this communication.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 89. Accordingly, DSOF ¶ 89 is undisputed and should be deemed admitted.

91.    In response, Ms. Blough emailed Ms. Bryant, stating:

> Hi Yvette. Yes, I am so sorry. We did talk last week and everything is good[,] and he heard my concerns. We had a good talk and he was out of the country for many months after I accepted this position things seem to be at a normal now with no further concerns or issues. We are all good. 😊

(Bryant Decl. (App. at ECF 70-7, pp. 4-8), ¶ 13, Exhibit 1).

**Plaintiff's Response: Admitted in part/ Denied in part. Admitted that Plaintiff sent an email to Ms. Bryant including the phrase "we are all good." Denied that this statement reflected genuine resolution of Plaintiff's concerns or satisfaction with the outcome. Plaintiff sent the message in an effort to de-escalate the situation after repeated cancellations and lack of response from Mr. Cruz, and to avoid further hostility or retaliation within the organization. The phrase was intended to conclude the exchange diplomatically, not to suggest that the underlying issues- unequal treatment, exclusion, and lack of support-had been addressed or resolved. Plaintiff's contemporaneous circumstances, including fear of retaliation and feeling isolated by leadership, explain the conciliatory tone of the message, which was a professional attempt to move forward rather than an indication of agreement with BCD's conduct.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 91, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 91. Moreover, the additional narrative

64

4911-9274-4308

included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 91; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 91 is undisputed and should be deemed admitted.

92.     Ms. Blough raised no concerns about alleged sex discrimination, a hostile work environment claim, or that she believed she was being paid less than male colleagues in her discussions with Ms. Bryant. (Bryant Decl. (App. at ECF 70-7, pp. 3-8), ¶¶ 10, 14, Exhibit 1).

**Plaintiff's Response: Denied. This characterization is inaccurate and based solely on Ms. Bryant's unsworn declaration, which was not made under oath or contemporaneous with the events described and reflects BCD's litigation narrative. Plaintiff's conversation with Ms. Bryant included her concerns about unequal treatment, exclusion, lack of support, and favoritism within leadership, all of which constitute hostile and discriminatory conduct even if the precise legal terms "sex discrimination" or "hostile work environment" were not used. Plaintiff also described feeling dismissed and isolated, with her concerns being minimized or ignored by Mr. Cruz. Her reluctance to label the conduct explicitly as "discrimination" stemmed from fear of retaliation and Kathy Jackson's prior warning that "you don't cross the Cruzes." The absence of formal terminology does not negate that Plaintiff raised the underlying issues of bias, hostility, and unfair treatment to HR.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 92. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 92; therefore, no further response to the narrative is required. Further, the Declaration of Yvette Bryant is not an "unsworn declaration" and is properly before the Court as

65

record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 92 is undisputed and should be deemed admitted.

93.     Ms. Blough did not raise any other concerns with Ms. Bryant about her employment with BCD. (Bryant Decl. (App. at ECF 70-7, p. 4), ¶ 15; Blough Dep. (App. at ECF 70-2, p. 35), 117:7-9).

**Plaintiff's Response: Denied. This statement is inaccurate and relies solely on Ms. Bryant's unsworn declaration, which was not made under oath or contemporaneously with the events described and reflects BCD's litigation narrative. Plaintiff did not continue raising concerns with Ms. Bryant because it was clear that leadership turned a blind eye to Jorge Cruz's management style, despite prior issues raised by other employees, and continued to enable the nepotism between Jorge and Deb Cruz. The company's repeated accommodations of their arrangement and willingness to appease Deb Cruz's preferences made it apparent that HR and leadership would not act impartially. Under those circumstances, Plaintiff saw little use in escalating her complaints further, as doing so would have only increased her fear of retaliation and further isolation.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 93. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 93; therefore, no further response to the narrative is required. Further, the Declaration of Yvette Bryant is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 93 is undisputed and should be deemed admitted.

## VI.    PLAINTIFF'S RESIGNATION

94.    On October 14, 2021, Ms. Blough resigned over the phone with Mr. Cruz. (Blough Dep. (App. at ECF 70-2, pp. 44-45), 152:12-153:7; Cruz Decl. (App. at ECF 70-5, p. 11), ¶ 66; JSOF (ECF 69) ¶ 45).

**Plaintiff's Response: Admitted.**

95.    In that phone conversation, Ms. Blough stated that she was leaving because she had been "trying to get him to right-set [her] pipeline for years; that [she didn't] feel like she was respected, that [she] was valued; and that … [she] was embarrassed by the way he treated [her] and the way he handled the opportunities." (Blough Dep. (App. at ECF 70-2, p. 45), 153:8-19; JSOF (ECF 69) ¶ 46).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that during the October 13, 2021 phone call with Jorge Cruz, Plaintiff stated that she had been "trying to get him to right-set [her] pipeline for years," that she did not feel respected or valued, and that she was embarrassed by the way he treated her and handled opportunities. Denied that these were the only reasons she gave for her resignation.**

**Mr. Cruz attempted to cancel the call, but Plaintiff insisted on speaking with him because she needed to express that her situation had become unbearable. Plaintiff explained that over the prior three years, she had repeatedly challenged the viability of her pipeline, raising it on every call and asking for equitable assignments following Mark O'Brien's departure and Deb Cruz's promotion. She told Mr. Cruz that she had not received a new RFP in more than two years, despite consistent efforts and proven success, and that he had**

**not made any effort to provide work commensurate with the position for which he had promoted her.**

**Plaintiff also told Mr. Cruz that she did not feel empowered in her role and that she was continually instructed to yield to others, including Kessie, Lisa McKenzie, and Andy Menkes, which left her sidelined and undermined. She emphasized that there was no lack of confidence shared with her at any time from when she was promoted from the time she was promoted to Vice President through that day, and that the repeated interference by Andy Menkes, in particular, was demoralizing and destructive to her authority. Plaintiff stated that she had been a loyal employee for nearly a decade, had never been placed on any performance counseling, and had always sought to resolve issues directly and professionally.**

**During the call, Mr. Cruz agreed and said he understood where she was coming from and that "it wasn't intentional," effectively acknowledging her concerns but offering no resolution. The call reflected the culmination of years of unaddressed inequities, loss of authority, and professional humiliation-constituting constructive discharge, not a voluntary resignation.**

*Defendant's Reply*: The entirety of DSOF ¶ 95 was contained in JSOF ¶ 46, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 95, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 95. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 95; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 95 is undisputed and should be deemed admitted.

4911-9274-4308

96.     She further stated that she "had gone through stress and anxiety and … was at the point where [she] just couldn't do it anymore." (Blough Dep. (App. at ECF 70-2, p. 45), 153:8-19; JSOF (ECF 69) ¶ 47).

**Plaintiff's Response: Admitted.**

97.     Ms. Blough followed her verbal resignation with an email alleging that she was forced to resign due to unbearable conditions that were causing her extreme stress, that she had an inadequate pipeline, lacked a sufficient level of authority and responsibility to run sales efforts as compared to her peers or even regional sales team members, and that assignments were not made to her as promised or in a fair manner, making her feel embarrassed and allegedly forcing her to resign. (Blough Dep. (App. at ECF 70-2, pp. 44-45), 152:18-153:7, Exhibit 11).

**Plaintiff's Response: Admitted.**

98.     Upon receiving Ms. Blough's resignation email, Mr. Cruz notified the Human Resources Department. Ursula Dvorkin, Senior Human Resource Business Partner, opened an investigation into Ms. Blough's claims. (Dvorkin Decl. (App. at ECF 70-6, p. 3), ¶¶ 7-8).

**Plaintiff's Response: Denied. Plaintiff disputes that Ursula Dvorkin conducted a prompt or impartial investigation. To date, Defendant has produced no contemporaneous investigation file (e.g., witness lists, interview notes, emails/Teams messages, document-review logs, or findings memorandum). There is likewise no evidence that Ms. Dvorkin interviewed key witnesses (e.g., Altman, Martin, Bratko, Deb Cruz) or reviewed core records (Salesforce histories, IMs, and emails) before concluding "no unfair treatment." The HR accounts provided by Yvette Bryant and Ursula Dvorkin are unsworn, post-hoc narratives**

**prepared for litigation, not contemporaneous records, and they omit Plaintiff's repeated reports of unequal treatment, exclusion, and favoritism. Without contemporaneous notes, interview summaries, or supporting documentation, there is no reliable basis to conclude a legitimate investigation occurred or to afford those narratives significant weight under Rule 56(c)(4).99. Denied. Plaintiff reiterated inequitable treatment, non-strategic assignments, and humiliation by leadership; HR notes omitted those details.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 98. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 98; therefore, no further response to the narrative is required. Further, the Declarations of Yvette Bryant and Ursula Dvorkin are not "unsworn declarations" and are properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 98 is undisputed and should be deemed admitted.

99.    On October 15, 2021, Ms. Dvorkin interviewed Ms. Blough. During this conversation, Ms. Blough once again focused on the inadequacy of her pipeline. (Blough Dep. (App. at ECF 70-2, p. 45-47), 155:11-156:12; Dvorkin Decl. (App. at ECF 70-6, pp. 3, 11), ¶ 9, Exhibit 3).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that on October 15, 2021, Plaintiff spoke with Ursula Dvorkin following her resignation email. Denied that Plaintiff "once again focused on the inadequacy of her pipeline" as if that were the sole or primary subject. The assertion that Plaintiff never alleged unfair treatment is false; HR narrowed the inquiry to 'pipeline concerns' and ignored context. In that conversation,**

**Plaintiff reiterated exactly what she told Mr. Cruz and what she wrote in her resignation-no more and no less: years of unequal treatment and exclusion, the loss of authority/empowerment (including being told to yield to others), the absence of work commensurate with the VP role, and the stress and humiliation caused by leadership's handling of opportunities-along with the inadequate pipeline. Ms. Dvorkin's contrary framing relies on an unsworn, litigation-prepared account rather than contemporaneous, documented findings; no neutral investigation file (notes, witness interviews, or record review) has been produced to support her characterization.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 99, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 99. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 99; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 99 is undisputed and should be deemed admitted.

100.    At no point did Ms. Blough allege that her lack of a pipeline was because Mr. Cruz was favoring her male colleagues or his wife or that she was otherwise subjected to discrimination based on her gender or subjected to a hostile work environment. (Dvorkin Decl. (App. at ECF 70-6, pp. 3, 11), ¶ 10, Exhibit 3).

**Plaintiff's Response: Denied. Plaintiff disputes this characterization. The statement relies solely on Ms. Dvorkin's unsworn, litigation-prepared declaration, which was not made under oath or contemporaneously with the events and omits key portions of their discussion.**

**During the October 15, 2021 conversation, Plaintiff reiterated the same concerns she expressed to Mr. Cruz and in her resignation email-nepotism, favoritism, exclusion from key opportunities, loss of authority, and ongoing humiliation under Mr. Cruz's leadership and the disrespectful treatment she received from other senior leaders, including being undermined and ignored in meetings and communications. Those complaints inherently described discriminatory and hostile conduct, even if Plaintiff did not use formal legal terminology such as "gender discrimination" or "hostile work environment." Plaintiff's concerns about Mr. Cruz's treatment of her, the preferential accommodation of his spouse, Deb Cruz, and the enabling conduct of other senior executives directly reflect the discriminatory and retaliatory conditions that led to her constructive discharge.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 100. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 100; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 100 is undisputed and should be deemed admitted.

101.    She did not claim BCD was paying her less than her peers based on her gender or that there were commissions that she was owed and did not receive. (Dvorkin Decl., (App. at ECF 70-6, pp. 4, 11) ¶ 11, Exhibit 3).

**Plaintiff's Response: Denied. Plaintiff disputes this characterization. The statement is based solely on Ms. Dvorkin's unsworn, litigation-prepared declaration, which omits the**

4911-9274-4308

**full scope of Plaintiff's statements and concerns. During the October 15, 2021 discussion, Plaintiff expressed that she had been denied the opportunity to earn commissions because she was repeatedly excluded from viable accounts and new RFPs, and that she was deprived of revenue-producing opportunities consistent with her Vice President role. Plaintiff's complaint centered on the loss of commission- eligible work, not on a base-salary disparity, and she made clear that her compensation had been adversely impacted by the inequitable distribution of accounts and leadership's failure to "right- set" her pipeline. To the extent Defendant suggests otherwise, it misrepresents the substance of Plaintiff's complaint and the basis for her claim of unequal treatment and constructive discharge.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 101. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 101; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 101 is undisputed and should be deemed admitted.

102.    Rather, Ms. Blough reported to Ms. Dvorkin that she felt that from the time she started in the global sales position her accounts were not strategic, had low impact and that she had low commission opportunities. (Dvorkin Decl. (App. at ECF 70-6, pp. 102, 11), ¶ 12, Exhibit 3).

**Plaintiff's Response: Denied. This statement is based solely on Ms. Dvorkin's unsworn, litigation- prepared declaration, which was not made under oath or**

**contemporaneous with the events described, and it does not accurately reflect the full scope of Plaintiff's statements. During her conversation with Ms. Dvorkin, Plaintiff followed the same script she used in her resignation call with Jorge Cruz and her follow-up email-no more and no less. Plaintiff reiterated that from the time she started in the Global Sales Vice President role, she had been denied meaningful and strategic accounts, that her pipeline was inadequate, and that she had lost authority, empowerment, and access to viable opportunities. Plaintiff described the demoralizing impact of ongoing interference, exclusion, and inequitable treatment, all of which reflected the same concerns she had repeatedly raised over the prior three years. Ms. Dvorkin's summary omits this context and should be afforded little evidentiary weight.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 102. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 102; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 102 is undisputed and should be deemed admitted.

103.    She also reported that she was embarrassed on several calls where someone other than her, usually an individual in a regional role, was leading the calls and not her, which affected her self-esteem. (Dvorkin Decl. (App. at ECF 70-6, pp. 4, 11), ¶ 13, Exhibit 3).

**Plaintiff's Response: Denied. This characterization is incomplete and misleading and is drawn solely from Ms. Dvorkin's unsworn, litigation-prepared declaration, which omits**

**the full scope of Plaintiff's concerns and experiences. Plaintiff did not merely report feeling "embarrassed on several calls." She explained that she was consistently undermined, ignored, and humiliated by Jorge Cruz, who frequently dismissed her input and, on one occasion, publicly embarrassed her during a leadership dinner in front of other executives. Plaintiff also described Kessie Bratko's mean-spirited and unprofessional conduct, including demeaning comments, gossiping with Lisa McKenzie, and spreading disparaging remarks to other senior leaders that damaged Plaintiff's professional reputation. Additionally, Andy Menkes exhibited condescending behavior, going to leadership behind Plaintiff's back to shift blame and take credit for her work. Collectively, these actions created a toxic and humiliating environment that eroded Plaintiff's authority, damaged her credibility with peers and leadership, and contributed directly to the stress and loss of confidence that culminated in her constructive discharge.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 103. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 103; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 103 is undisputed and should be deemed admitted.

104.    Ms. Blough gave several examples of how she felt her pipeline was lacking. Specifically, she claimed that none of Mark O'Brien's accounts were assigned to her after his termination in 2021, that Debra Cruz maintained some of her non-entertainment accounts after she

moved into the Media and Entertainment role, and that Ms. Blough felt that some of these accounts could have been transferred to her. (Dvorkin Decl. (App. at ECF 70-6, pp. 4, 11), ¶ 14, Exhibit 3).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Plaintiff discussed the lack of viable accounts in her pipeline and referenced that none of Mark O'Brien's former accounts were reassigned to her following his termination, and that Deb Cruz retained non-media accounts after her transfer to the Media & Entertainment division. Denied that Plaintiff's comments were limited to "how she felt" or mere personal opinion. Plaintiff's statements were based on objective facts supported by internal records showing that Mr. O'Brien's accounts were redistributed to others-including male subordinates and Deb Cruz-while Plaintiff, despite her tenure and title, received none of them. She further explained that this pattern demonstrated ongoing favoritism, exclusion, and lack of transparency in account assignments. This statement is drawn solely from Ms. Dvorkin's unsworn, litigation-prepared declaration, which omits that Plaintiff's examples were presented as evidence of systemic inequity, not as isolated feelings.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 104, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 104. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 104; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 104 is undisputed and should be deemed admitted.

105.    At no point did Ms. Blough tell Ms. Dvorkin that she believed she did not receive more or better opportunities due to her gender. (Dvorkin Decl. (App. at ECF 70-6, p. 4), ¶ 17).

**Plaintiff's Response: Denied. This conversation did not occur as described. The statement is based solely on Ms. Dvorkin's unsworn, litigation-prepared declaration, which was not made under oath or contemporaneously with the events described and reflects BCD's narrative rather than an objective account. Plaintiff did not provide "several examples" as alleged; instead, she reiterated the same statements she made during her resignation call with Jorge Cruz and in her follow-up email-no more and no less. Plaintiff restated that she had been denied equitable opportunities, that her pipeline had been stagnant for years, and that the conditions of exclusion and favoritism had become unbearable, leaving her no choice but to resign. Ms. Dvorkin's description mischaracterizes the discussion and omits that Plaintiff's statements were consistent with her constructive discharge explanation, not a new or expanded account of her concerns.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 105. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 105; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 105 is undisputed and should be deemed admitted.

4911-9274-4308

106.    Instead, Ms. Blough simply complained that when Mark O'Brien left BCD and Ms. Cruz transferred out of the global sales team earlier that year, none of their accounts were reassigned to her. (Dvorkin Decl. (App. at ECF 70-6, p. 5), ¶ 18).

**Plaintiff's Response: Denied. This characterization is inaccurate and based solely on Ms. Dvorkin's unsworn, litigation-prepared declaration, which was not made under oath or contemporaneous with the events described. Plaintiff did not "simply complain" about account assignments; she reiterated the same concerns expressed in her resignation call with Jorge Cruz and in her follow- up email-that her pipeline had been stagnant for years, that no meaningful or strategic accounts were reassigned to her following Mark O'Brien's termination and Deb Cruz's transfer, and that leadership had repeatedly ignored her requests to "right-set" her pipeline. Plaintiff emphasized that these omissions were part of a broader pattern of exclusion, inequitable treatment, and loss of authority that made her position untenable. Ms. Dvorkin's summary omits this context and should be afforded little evidentiary weight.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 106, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 106. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 106; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 106 is undisputed and should be deemed admitted.

4911-9274-4308

107.    When Ms. Dvorkin asked Mr. Cruz about how he reassigned Mr. O'Brien's accounts, Mr. Cruz explained that they were reassigned largely based on geographic proximity to the client and the decisionmaker. (Dvorkin Decl. (App. at ECF 70-6, p. 5), ¶ 19).

**Plaintiff's Response: Denied. This statement is based solely on Ms. Dvorkin's unsworn, litigation- prepared declaration, which was not made under oath or contemporaneous with the events described. The explanation attributed to Mr. Cruz - that account reassignments were made "based on geographic proximity to the client and decisionmaker" - is contradicted by BCD's own records and prior filings showing that Vice Presidents of Global Sales were located across multiple continents, and that geography was not a consistent or determining factor in account assignments. The reassignment of Mark O'Brien's accounts to individuals such as Deb Cruz (California), Sachin Sekhri (New Jersey), Ton Maanicus (Belgium), and Nick Dewey (United Kingdom)-while none were given to Plaintiff, who was based in the United States- demonstrates that proximity was a pretext used to justify favoritism and inequitable distribution. Ms. Dvorkin's account omits this context and should be afforded little evidentiary weight.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 107. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 107; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 107 is undisputed and should be deemed admitted.

108.     Mr. O'Brien was a Vice President of Global Sales in the United Kingdom. Many of his accounts were reassigned to other global sales leaders who were in close proximity to the decisionmakers of the clients or prospects. (Cruz Decl. (App. at ECF 70-5, p. 8-10), ¶¶ 54-55).

**Plaintiff's Response: Denied. Plaintiff disputes this statement as inaccurate and misleading. The claim that Mark O'Brien's accounts were reassigned based on geographic proximity is contradicted by BCD's own records and filings, which show that the Vice Presidents of Global Sales were located around the world-including Susan Altman (Chicago), Deb Cruz (California), Vanessa Moore (Australia), Mark O'Brien (United Kingdom), and Sachin Sekhri (New Jersey). Thus, geography could not have been a consistent or controlling factor in reassigning accounts. The record demonstrates that after Mr. O'Brien's termination, high-value global accounts were distributed to preferred employees, including Deb Cruz, Sachin Sekhri, Ton Maanicus, and Nick Dewey, while Plaintiff-who was equally qualified and located in the United States-received none. The geographic proximity rationale was therefore a pretextual explanation used to justify favoritism and the continued exclusion of Plaintiff from viable revenue-generating opportunities.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 108. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 108; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 108 is undisputed and should be deemed admitted.

109.     Based on the information Ms. Blough and Mr. Cruz provided, Ms. Dvorkin did not conclude that Ms. Blough was treated unfairly. (Dvorkin Decl. (App. at ECF 70-6, p. 5), ¶ 20).

4911-9274-4308

**Plaintiff's Response: Denied. This conclusion is drawn solely from Ms. Dvorkin' s unsworn, litigation- prepared declaration, which was not made under oath or contemporaneous with the events described and is unsupported by any contemporaneous investigation file or documentation. Plaintiff disputes that Ms. Dvorkin conducted any legitimate or impartial review of the information provided. No witnesses were interviewed, no relevant communications or Salesforce data were reviewed, and no written findings were shared with Plaintiff. Ms. Dvorkin's claimed "conclusion" ignores the substance of Plaintiff's resignation call and follow-up email, in which she reported favoritism, exclusion, humiliation, and loss of authority under Mr. Cruz's leadership. Without contemporaneous notes or supporting evidence, there is no credible basis for Ms. Dvorkin's assertion that Plaintiff was treated fairly or that any genuine investigation occurred.**

*Defendant's Reply*: Plaintiff has not pointed to any specific part of the record that disputes any part of DSOF ¶ 109. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 109; therefore, no further response to the narrative is required. Further, the Declaration of Ursula Dvorkin is not an "unsworn declaration" and is properly before the Court as record evidence for purposes of Defendant's Motion for Summary Judgment. Accordingly, DSOF ¶ 109 is undisputed and should be deemed admitted.

110.    Ms. Blough was the sales lead for Boston Scientific. The contract was in the process of being signed when Ms. Blough resigned from BCD, and it was not signed until after her termination from BCD's employment. (Blough Dep. (App. at ECF 70-2, p. 43), 141:12-23; JSOF (ECF 69) ¶ 48).

4911-9274-4308

**Plaintiff's Response: Admitted.**

111.    The Boston Scientific contract was executed on April 25, 2022, after Ms. Blough's termination from BCD. (Cruz Decl. (App. at ECF 70-5, p. 12), ¶ 68).

**Plaintiff's Response: Admitted.**

112.    Ms. Blough filed a charge of discrimination with the EEOC on June 13, 2022 alleging, *inter alia*, that she was discriminated against based on her sex, was discriminated against in violation of the Equal Pay Act, and that she was subjected to a hostile work environment. (JSOF (ECF 69) ¶ 49).

**Plaintiff's Response: Admitted.**

## VII.    PLAINTIFF'S CONFIDENTIALITY AGREEMENTS

113.    When Ms. Blough was hired, she signed BCD's Confidentiality/Non-Solicitation Agreement ("Confidentiality Agreement") on or about February 6, 2012. (Blough Dep. (App. at ECF 70-2, p. 3), 22:5-16; 2012 Confidentiality Agreement, ECF 21-1, pp. 2-3; JSOF (ECF 69) ¶ 50).

**Plaintiff's Response: Admitted.**

114.    Ms. Blough understood that the Confidentiality Agreement required her to maintain BCD records and client information confidentially both during and after her employment. (Blough Dep. (App. at ECF 70-2, p. 3), 22:17-23; JSOF (ECF 69) ¶ 51).

**Plaintiff's Response: Admitted.**

115.    Section 2(b) of the Confidentiality Agreement defines "Confidential Information" to include:

> [A]ll information, documents, or facts pertaining to BCD Travel, without regard to form, which Employee has learned in the course of this Agreement and in discussions and proposals leading up to this Agreement. Confidential information also includes any information described in this paragraph that BCD Travel obtains from another party, including, but not limited to, its partners, suppliers, or vendors, and Restricted Clients and treats as proprietary or designates as confidential information, whether or not owned or developed by BCD Travel.

(JSOF (ECF 69) ¶ 52; 2012 Confidentiality Agreement, ECF 21-1, p. 2).

**Plaintiff's Response: Admitted.**

116.    Section 2(f) of the Confidentiality Agreement, likewise, defines "Trade Secrets," in relevant part, as:

> [I]nformation in any form, including, but not limited to . . . sales history, profit margins . . . client proposals, internal communications . . . financial data (including sales and sales forecasts), and lists of actual or potential clients or vendors (including identifying information about such parties) which (i) derives economic value, actual or potential from being generally known to other persons who can derive economic value from the disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

(JSOF (ECF 69) ¶ 53; 2012 Confidentiality Agreement, ECF 21-1, p. 2).

**Plaintiff's Response: Admitted.**

117.    In consideration for training, and other good and valuable consideration by signing the Confidentiality Agreement, Ms. Blough agreed to comply with the terms of the Confidentiality Agreement, agreed to protect BCD's trade secrets, and agreed not to "directly or indirectly, (a) use or disclose any Confidential Information, other than for the benefit of BCD Travel" during her

4911-9274-4308

employment with BCD and for two (2) years thereafter." (2012 Confidentiality Agreement, ECF 21-1, p. 3; 2020 Confidentiality Agreement, ECF 15-1, p. 17, Section 3; 2021 Confidentiality Agreement, ECF 15-1, p. 29, Section 3; JSOF (ECF 69) ¶ 54).

**Plaintiff's Response: Admitted.**

118. Similar to Ms. Blough's initial offer letter in 2012, Ms. Blough's 2018 offer letter for the Vice President, Global Sales position explained the terms and conditions of her new role, and how she was still bound by a Confidentiality/Non-Solicitation Agreement. (Offer Letter, ECF 21-2, p. 2; JSOF (ECF 69) ¶ 55).

**Plaintiff's Response: Admitted.**

119. On January 20, 2020, Ms. Blough executed a Sales Incentive Plan ("2020 Sales Incentive Plan"), which took effect on January 1, 2020. (2020 Sales Incentive Plan, ECF 15-1, pp. 7-18; JSOF (ECF 69) ¶ 56).

**Plaintiff's Response: Admitted.**

120. The 2020 Sales Incentive Plan included a confidentiality and non-solicitation provision as well as attached a Confidentiality/Non-Solicitation Agreement, which Ms. Blough executed on March 30, 2020. (2020 Confidentiality Agreement, ECF 15-1, pp. 16-18, Section 3, ECF 15-1; JSOF (ECF 69) ¶ 57).

**Plaintiff's Response: Admitted.**

84

121.    By signing the 2020 Sales Incentive Plan, Ms. Blough acknowledged and agreed to be bound by the terms set forth in Section O of the Plan, which states as follows:

> Sales Staff recognize and acknowledge that lists of customers, prospects, methods of pricing, marketing, and other operations and sales activity are trade secrets, and as such, are valuable, special, and unique assets of BCD Travel. Accordingly, each Sales Staff member must execute, agree to be bound by BCD Travel's Confidentiality/Non-Solicitation Agreement to be eligible for participation in this Plan.

(2020 Sales Incentive Plan, ECF 15-1, p. 14; JSOF (ECF 69) ¶ 58).

**Plaintiff's Response: Admitted.**

122.    Ms. Blough executed a new Sales Incentive Plan and a Confidentiality Agreement on February 12, 2021, which was effective from January 1, 2021 through December 31, 2021. (2021 Sales Incentive Plan, ECF 15-1, pp. 19-30; JSOF (ECF 69) ¶ 59).

**Plaintiff's Response: Admitted.**

123.    By signing the 2021 Sales Incentive Plan, Ms. Blough acknowledged and agreed to be bound by Section M of the Plan which set forth the same confidentiality and non-solicitation terms and conditions as her 2020 Sales Incentive Plan. (2021 Sales Incentive Plan, ECF 15-1, p. 26; JSOF (ECF 69) ¶ 60).

**Plaintiff's Response: Admitted.**

124.    BCD entrusted Ms. Blough with trade secret, confidential, and/or proprietary business information, including, but not limited to the following: list of clients, list of prospective clients, client contact information, client sales histories, client pricing, BCD business marketing

4911-9274-4308

and sales strategies, client travel policies, and financial data. (Cruz Decl. (App. at ECF 70-5, p. 12), ¶ 69).

**Plaintiff's Response: Admitted.**

125.    BCD was asked to sign a non-disclosure agreement when it began to work on any response to a request for proposal. From Ms. Blough's experience, BCD "always got a mutual NDA in place whenever we were exchanging information," including BCD's pricing and offerings. (Blough Dep. (App. at ECF 70-2, p. 6), 46:8-19; JSOF (ECF 69) ¶ 61).

**Plaintiff's Response: Admitted.**

126.    Per the terms of the 2012 Confidentiality Agreement and the 2020 and 2021 Sales Incentive Plans (collectively referred to as "Confidentiality Agreements"), Ms. Blough was prohibited from using or disclosing confidential information except for the benefit of BCD during her employment and for two (2) years after her resignation and she was prohibited from disclosing BCD's trade secrets to the full extent provided by the law in Georgia. (2012 Confidentiality Agreement, ECF 21-1, p. 3; 2020 Confidentiality Agreement, ECF 15-1, p. 17, Section 3; 2021 Confidentiality Agreement, ECF 15-1, p. 29, Section 3; JSOF (ECF 69) ¶ 62).

**Plaintiff's Response: Admitted.**

127.    Louise Miller is a former BCD employee who was not employed by BCD in June or July 2021. (Cruz Decl. (App. at ECF 70-5, p. 12), ¶ 70).

**Plaintiff's Response: Admitted.**

4911-9274-4308

128. On June 21, 2023, Ms. Blough filed her Complaint ("Complaint") in the United States District for the Middle District of Pennsylvania, which contained the following information filed on the public docket:

a. Financial data of clients and potential clients, including the number of transactions for clients Halliburton and Boston Scientific (ECF 1, ¶ 32);

b. Names of clients and potential clients throughout (*See* ECF 1, ¶¶ 15, 17, 27-28, and 32); and

c. The entire Sales Incentive Plans for 2020 and 2021, which contains competitive pricing information. (ECF 1, Exhibit B).

(Complaint, ECF 1; JSOF (ECF 69) ¶ 67).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Plaintiff's Complaint, filed on June 21, 2023 in the United States District Court for the Middle District of Pennsylvania, contained references to client names, transaction figures, and excerpts from the 2020 and 2021 Sales Incentive Plans. Denied that any of this information constituted the improper disclosure of confidential or proprietary data. The information cited was lawfully obtained and already available within the public domain, including from prior court filings, industry publications, and documents produced by Defendant during discovery. The inclusion of this material was necessary to identify comparators and establish the factual basis of Plaintiff's claims, and all such references were filed on the public docket in accordance with federal court procedure. Plaintiff's use of evidence is protected under Rule 26 and the Federal Rules. She has not used or disclosed information outside this proceeding; client references are public or necessary to prove discrimination, retaliation, and constructive discharge. BCD's contrary characterization is baseless and retaliatory.**

4911-9274-4308

*Defendant's Reply*: The entirety of DSOF ¶ 128 was contained in JSOF ¶ 67, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 128, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 128. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 128; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 128 is undisputed and should be deemed admitted.

129.    This information contains confidential and proprietary trade secret information. (Cruz Decl. (App. at ECF 70-5, p. 12, ¶ 71).

**Plaintiff's Response: Denied. Plaintiff disputes that the information referenced in her Complaint constitutes confidential or proprietary trade secret information. The data cited - including client names, transaction figures, and excerpts from the 2020 and 2021 Sales Incentive Plans - was lawfully obtained from Defendant's own filings and publicly available sources within the public domain at the time of filing. Much of this information had already been produced or disclosed by BCD in prior litigation filings, discovery materials, or industry publications such as Business Travel News. Plaintiff's inclusion of these materials was made in good faith and in accordance with court procedures to support her claims and does not constitute any unauthorized use or disclosure of confidential or trade secret information.**

*Defendant's Reply*: Plaintiff admits portions of DSOF ¶ 129, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 129. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations, and is not responsive to the statement of fact in DSOF ¶ 129; therefore, no further

4911-9274-4308

response to the narrative is required. Accordingly, DSOF ¶ 129 is undisputed and should be deemed admitted.

130.    In paragraph 28 of her Original Complaint, Ms. Blough identified the specific amount of commissions she could have earned had BCD been successful in its bids to provide travel services for Eli Lilly and Johnson & Johnson. She did so using the figures BCD included in its proposal to Eli Lilly and the estimated transactions BCD had in Salesforce from its last bid for Johnson & Johnson. (Blough Dep. (App. at ECF 70-2, p. 38), 131:13-23; Complaint, ECF 1, ¶ 28; JSOF (ECF 69) ¶ 68).

**Plaintiff's Response: Admitted in part/Denied in part. Admitted that Plaintiff's Original Complaint included a reference to the estimated commissions she could have earned had BCD been successful in its bids for Eli Lilly and Johnson & Johnson. Denied that any improper or confidential information was disclosed. The figures cited were based on data lawfully available through BCD's own bid materials and Salesforce summaries previously disclosed in discovery and within the public record, and were used solely to illustrate the scope of Plaintiff's lost earning potential. Plaintiff's inclusion of those estimates was a good-faith effort to quantify damages arising from the loss of those opportunities and does not constitute any misuse or disclosure of confidential or proprietary information.**

***Defendant's Reply***: The entirety of DSOF ¶ 130 was contained in JSOF ¶ 68, thus it is undisputed. Further, Plaintiff admits portions of DSOF ¶ 130, but she has not pointed to any specific part of the record that disputes any part of DSOF ¶ 130. Moreover, the additional narrative included in Plaintiff's Response is improper argument, is not supported by any record citations,

and is not responsive to the statement of fact in DSOF ¶ 130; therefore, no further response to the narrative is required. Accordingly, DSOF ¶ 130 is undisputed and should be deemed admitted.

131.    Ms. Blough's Original Complaint was filed the Middle District's ECF system, which is available to the general public. (Complaint, ECF 1; JSOF (ECF 69) ¶ 69).

**Plaintiff's Response: Admitted.**

Dated: October 31, 2025

Respectfully submitted,

*/s/ Katelyn W. McCombs*
Mark T. Phillis (PA No. 66117)
mphillis@littler.com
Katelyn W. McCombs (PA No. 323746)
kmccombs@littler.com

LITTLER MENDELSON, P.C.
One PPG Place, Suite 2400
Pittsburgh, PA 15222
PH: 412.201.7636 /7641
FAX: 412.774.3756

*Attorneys for Defendant*
*BCD Travel USA LLC*

4911-9274-4308

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 31st day of October, 2025, a copy of the foregoing Defendant's Reply to Plaintiff's Responses to Defendant's Concise Statement of Material Facts was filed using the Western District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Kathryn L. Simpson
METTE, EVANS & WOODSIDE, P.C.
3401 N. Front Street
P.O. Box 5950
Harrisburg, PA 17110
klsimpson@mette.com

Gary D. Abrams
Gary D. Abrams & Associates, LTD
55 West Monroe Street
Chicago, IL 60603
Telephone: 312.263.4085
Gda2164@gmail.com

*/s/ Katelyn W. McCombs*
Katelyn W. McCombs

4911-9274-4308